HENRY *et al. v.* ROBERTS.

*(Circuit Court, D. Maryland. May 16, 1892.)*

CONSTITUTIONAL LAW—POLICE POWER—DRIFTED LOGS.
The provisions of the Maryland Code, art. 34, giving to the owner of any shore of the Chesapeake bay and its tributaries, upon whose land logs are cast by wind and tide, a lien upon the.logs of 25 cents for each log, and forbidding the owner of the logs from removing them without payment, *held* to be valid and constitutional legislation within the proper exercise of the police power of the state. *Held,* that the state legislation was not an unconstitutional and arbitrary interference with private rights; that it was not an attempt to regulate commerce: and that it did not deprive the owner of the logs of his property without due process of law.

At Law. Action of replevin. Heard on demurrer to the special plea. Overruled.

*Morrison, Munnikhuysen & Bond,* for plaintiffs.

*H. Arthur Stump,* for defendant.

MORRIS, District Judge. This is a replevin suit instituted by the plaintiffs, Henry & Strong, citizens of Pennsylvania, to recover about 8,000 logs from the possession of the defendant, Roberts, a citizen of Maryland, the logs being upon defendant's island, called "Roberts' Island," in the Susquehanna river, in Harford county, Md., and appraised at $5,706. The defendant has filed a special plea, in which he sets up that in June, 1889, the logs in controversy were cast by wind and tide upon the said island, and remained until November following, when they were taken away by the plaintiffs under the writ of replevin in this case; that by the Maryland acts of 1870 and 1872, and Maryland Code, art. 34, the defendant, at the time of the taking under the writ of replevin, had a lien on the logs to secure compliance with the terms of said acts, and had a right to the possession thereof. The Maryland act of 1870, c. 229, was entitled "An act for the protection of the owners of land bordering upon the Chesapeake bay and its tributaries;" and the act of 1872, c. 258, was entitled "An act for the better protection of landowners bordering on the Chesapeake bay and its tributaries." They have been codified in the Maryland Code as parts of article 34, which treats of estrays, vessels adrift, and drift logs. The pertinent sections are as follows:

"Sec. 12. All persons claiming logs cast by wind and tide upon any shore bordering upon the Chesapeake bay and its tributaries are hereby prohibited from removing the same without the payment to the owner of the said shore the sum of twenty-five cents for each log so removed. Sec. 13. The owner of any shore upon which logs are so cast may advertise such logs by one insertion each week for three successive weeks in some newspaper published in the state of Maryland, of a public notice calling upon the owner of said logs to remove them after the payment of twenty-five cents for each log so removed, and the cost of said advertisement in addition therewith. Sec. 14. If the said logs are not removed after such publication, the owner of any shore may sell such logs to the highest bidder by giving notice of his intention so to do by an additional advertisement for three successive weeks as aforesaid, mentioning the time and place of sale. Sec. 15. Any owner of a shore, so selling, shall be responsible for the excess of such sale over the sum of twenty-five cents for each log sold and the cost of the aforesaid advertisement and sale. Sec. 16. Nothing herein contained shall be construed to deny to the owner of any shore right to an additional compensation for special damages, such as the destruction of fences, the lodging of logs upon cultivated fields, or other similar injuries."

Other provisions of the law enact penalties against any one removing logs without complying with the foregoing provisions and for willfully marking such logs, and that any judgment against the landowner for such logs shall be null and void, unless the claimant has actually paid the landowner the prescribed 25 cents for each log. The plaintiffs have demurred to the defendant's special plea, and urge in support of their demurrer that the Maryland act is unconstitutional and void (1) because it

is an unconstitutional and arbitrary interference with private rights; (2) because it is an attempt by the state to regulate commerce; (3) because it authorizes the taking of private property without due process of law.

The authority of the state to legislate upon this subject is based upon its supposed right to enact regulations with regard to property cast upon the lands bordering upon the navigable waters of the state. The right to regulate highways, both the natural waterways and rivers, as well as roads, is a recognized and comprehensive branch of state sovereignty, usually classed as a part of the police power. Wharves and ferries, and the charges for the use of them, the building of dams and other structures on navigable streams, the manner in which logs and rafts shall be floated and guarded, the preservation of the shores, the construction of embankments and levees, are all subjects of regulation by state legislation under its police power. *Harrigan* v. *Lumber Co.*, 129 Mass. 580; *Scott* v. *Willson*, 3 N. H. 321; *Sherlock* v. *Alling*, 93 U. S. 99; *Craig* v. *Kline*, 65 Pa. St. 399. It is true that navigable rivers are public highways, but the right which the public has is a right of passage, and not of using the adjoining land as a place for depositing property or storing logs. *Littlefield* v. *Maxwell*, 31 Me. 134; *State* v. *Wilson*, 42 Me. 9. Under such circumstances as give rise to the present controversy the land is made use of by the owner of the logs necessarily without previous consent or agreement, and such use is likely to lead to dispute and disorder unless regulated by statute. Such regulation would seem to be a very salutary exercise of the state police power. In other states laws upon this subject have been enacted. In Maine and in Pennsylvania it has been enacted that logs lodged upon littoral lands shall be forfeited to the owners of the land. Although not stated in the pleadings, it was conceded in argument that the logs in controversy had been in the Susquehanna river, in Pennsylvania, and had been carried by a freshet out of that state into Maryland, and it is contended by the plaintiffs that the Maryland statute, in so far as it affects property transported from an adjoining state, is an attempt to regulate interstate commerce. If it be conceded that the facts of the case bring the subject within the principles applicable to interstate commerce, yet reasonable regulations with regard to the charges for the use of the property within the state, although used in connection with interstate commerce, have not been held to be necessarily a matter confided exclusively to congress by the federal constitution. *Packet Co.* v. *Catlettsburg*, 105 U. S. 559; *Packet Co.* v. *Keokuk*, 95 U. S. 80. In *Munn* v. *Illinois*, 94 U. S. 113, a state law was upheld which regulated the warehouse charges on grain brought into Illinois in the course of interstate commerce; and so in the present case, even if it can be true that such commerce may be indirectly affected, it would seem that the state may validly regulate the charges to be allowed for the use of land bordering upon its navigable waters in the absence of private agreement. It was also held in *Munn* v. *Illinois* that if under any state of facts which might reasonably be supposed to exist the legislation would be justified, it was fair to presume that such facts did exist when the state enacted the remedial statute, and in the

present case, it being, as I think, within the police power of the state to fix a reasonable compensation for the use of littoral lands by logs cast up on the shores, it must be presumed that the actual condition of things required the passing of the law. Indeed, it is common experience that, whenever parties are compelled by necessity to come under obligations to each other without opportunity for previous agreement, the legislative power is obliged to regulate the compensation which may be exacted in order to prevent extortion and abuse.

The last ground of demurrer is based upon the contention that the Maryland act subjects the owner of the logs to the deprivation of his property without due process of law. The objection is taken that the proceedings prescribed by the statute to enable the landowner to sell the logs for the payment of the charges, after notice by publication, without any judicial determination of the amount payable, fails to amount to due process. It seems to me that in the present case it is not necessary to consider this question. If the state has a right to regulate the charges, it has a right to enact that the landowner upon whose land the logs have been cast shall have a lien on them for the prescribed charge, and that he may retain possession until the amount is paid. This is all that is enacted by the first section of the statute. The right to hold possession of a chattel until a charge which is a lien upon it is paid is a most common legal right. What proceedings to enforce such a lien resulting in a sale are sufficient to pass a good title, and to deprive the owner of his property by due process of law, is a separate question. In the present case the defendant has done nothing, so far as appears, to enforce his lien. The logs remained in his possession upon his land from June to November, when the plaintiffs, refusing to pay the charges, took them under this replevin. There has been no attempt to deprive the owner of his property in the logs, and objection to the statutory proceedings for a sale are not proper to be considered in this case.

Another suggestion under this head is that the compensation of 25 cents for each log is such an unreasonably excessive exaction, and that in some cases it would amount to depriving the owner of his property. To this it is sufficient reply that nothing appears in this case tending to show it to be a fact, and every presumption is in favor of the reasonableness of the legislative enactment. The demurrer is overruled.