MAX FISHMAN v. THE CONSUMERS BREWING COMPANY.

Submitted March 19, 1909—Decided June 7, 1909.

The fact that a fire occurred upon the same premises, seven years prior to the occurrence of the fire in question, is not admissible to prove the existence of negligence upon the part of defendant as the proximate cause of the fire in question, where the testimony showed the conditions to be different.

On appeal from the District Court of the city of Newark.

Before Justices REED, TRENCHARD and MINTURN.

For the appellant, *Child & Carter* (*Riker & Riker,* of counsel).

For the appellee, *Philip J. Schotland.*

The opinion of the court was delivered by

MINTURN, J.   The plaintiff's horse, top buggy and other chattels incident thereto were destroyed by a fire, which, as plaintiff alleges, originated in a heap of burnt ashes adjoining the stable of Nicholl & Company, where the property in question was kept.   The ash heap was upon defendant's premises close to the stable, and the fire took place about half-past three o'clock of the morning of February 19th, 1908.   The plaintiff, over continuous objections, deemed it necessary for the purpose of his case, to ask the witness Martin these questions:

"*Q*. To your knowledge was there a fire at the same place before this?

"*A*. Yes, sir.

"*Q*. When was that?

"*A*. On the 14th of December, 1901.

"*Q*. And did you make an investigation at that time?

"*A*. Yes, sir.

"*Q*. What did you find at that time might cause the fire?

"*A*. Hot ashes against the weather boards.

"*Q*. What burned at that time?

"*A*. Weather boards.

"*Q*. Did you make an investigation of the cause of those weather boards burning at that time?

"*A*. Yes.

"*Q*. Where were those weather boards you speak of?

"*A*. About the same location as the last fire."

It further appeared from the testimony of this witness that after the 1901 fire a sheet-iron plate had been placed between the ash heap and the stable, and that when this witness reached the scene of the fire shortly after it started, that iron plate was not hot, but cool enough, indeed, to enable him to handle it. It will be perceived, therefore, that the conditions preceding the two fires were essentially different.

The only purpose, apparently, which could actuate the plaintiff in introducing this character of testimony as material to his cause, is the specious reasoning included in the proposition, *propter hoc,* the fire of 1901 originated; *ergo post hoc,* the fire in question must have so originated, and it requires

.no elaboration of argument to expose the fallacy of such a syllogism both in logic and in law.

Relevancy of testimony, as defined by Stephen, is "that any two facts to which it is applied are so related to each other that, according to the common course of events, one, either taken by itself or in connection with other facts, proves or renders possible the past, present or future existence of non-existence of the other." *Steph. Dig. Ev.*, art. 1.

The testimony in the case made it quite manifest that, since the fire of 1901, conditions had changed, and precautions against fire had been taken by defendant, so that under no reasonable construction of the physical principle of cause and effect could this testimony be applicable. It is inadmissible because of its remoteness in point of time, during which interim changed conditions resulted, but, primarily as is said in one case, "upon grounds of public policy to prevent the multiplication of issues in a case" without apparent connection. *Costello* v. *Connell,* 129 *Mass.* 588; *State* v. *Raymond,* 24 *Vroom* 260; *Collins* v. *New York Central Railroad Co.,* 109 *N. Y.* 243.

For this reason the judgment is reversed and a *venire de novo* is awarded.