IN ERROR.
........
ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

JACOB TRAVIS, AND OTHERS,                *Appellants,*

against

THOMAS WATERS,                           *Respondent.*

If a party in a suit in chancery dies before costs are decreed, the right to costs up to that time is extinguished; unless the costs are payable out of a particular fund, or are connected with a duty toward the party claiming them, when they are granted as matter of relief.

But the plaintiffs, on a bill of revivor, cannot claim the costs, unless they come before the court expressly in the character of *personal* representatives of the deceased party.

So, if the bill of revivor state the plaintiffs to be the heirs and devisees of the party deceased, though, in fact, they be also his executors, yet they can be taken notice of only in the former character, in which they appear before the court.

The general rule, in law and equity, is, that where the party dies before judgment or a decree, the costs die with the person.

Costs in equity rest in the discretion of the chancellor, and do not always follow a decree in favour of the party praying relief.

If a *final* decree is silent as to costs,

THIS was an appeal from an order of the court of chancery. The bill in the court below, was filed in 1802, in the name of *Ezekiel Travis,* for a specific performance of an agreement for the sale of land, and for an account against *Thomas Waters,* the respondent. The bill stated a verbal agreement, and that the defendant took possession of the land, under it, and made several payments; that the respondent had since commenced an action of ejectment to recover the possession of the premises, and had obtained a verdict at law. The cause having been put at issue, and the evidence respecting the payments being contradictory, a feigned issue was awarded by the court of chancery, to ascertain the facts as to certain payments alleged to have been made; and on the trial of the issue at law, a verdict was found for the plaintiff.

On the 27th of *October,* 1808, the court of chancery decreed a conveyance, in fee, of part of the premises, to be executed by the respondent, and directed the master to take an account of the quantity of land to be conveyed, and of the payments, and to ascertain the balance, if any, due to the respondent, on the payment of which, he was to execute the conveyance; and that the question of costs be reserved until the coming in of the master's report. The respondent appealed from that decree to this court, in 1812, and the decree was affirmed with costs, and the record remitted to the court of chancery, in order that the decree of this court should be carried into execution.(a)

*Ezekiel Travis,* the complainant, died the 13th of *August,* 1812; and on the 24th of *August,* the appellants, who are his heirs, and devisees, and two of them his executors, filed their

(a). *Vide* 9 Johns. Rep. 450.

the question of costs not having been expressly reserved, the court will not grant them on a subsequent application, unless there is a rehearing on the merits.

A decree, on a bill for a specific performance; on the coming in of the master's report as to the quantity of land to be conveyed, and the payments made, directing the balance due to be paid. and the conveyance to be executed, is a *final* decree.

Whether an appeal will lie; from a decree of costs only, in any case ? *Quære.*

But where a plaintiff in chancery has been guilty of laches, or waived his claim to costs, by his neglect and inattention in obtaining the final decree, no appeal will lie from the order of the chancellor refusing his application for costs.

IN ERROR.
........
ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

bill of revivor and supplemental bill, which having been ordered to be taken *pro confesso*, the court of Chancery, on the 23d of *January*, 1813, on the hearing of the appellants only, ordered the cause to stand revived; and the master, as before directed by the order of *October*, 1808, was ordered to take an account, and that on the payment of the balance, if any, the respondent should execute a conveyance; that the appellants might sue out execution for the costs decreed in favour of *Ezekiel Travis*, by this court; and that all further directions be reserved until the coming in of the master's report. The master made his report, which was filed the 17th of *May*, 1813, and the usual order entered for its confirmation, unless cause shown to the contrary in eight days.

This order having become absolute, the appellants, without having the cause set down for hearing, obtained an order of the chancellor, entered the 31st of *May*, ordering the respondent, under the directions of one of the masters of the court, on the payment or tender, by the appellants, of 13 dollars and 24 cents, the balance found due by the report, and the interest thereon, from the 1st of *April*, to execute and deliver to the appellants a good and sufficient deed for the parcel of land mentioned in the report, according to the decree of the court of chancery, of the 23d of *January*, 1813. This decree being silent as to *costs*, the cause was set down for a hearing as to the matter of costs, in *September*, 1813; and the chancellor, on the 8th of *October* following, decreed the payment of costs by the respondent, including as well the costs of the original, as of the present suit, the costs of defending the ejectment suit at law, and of the feigned issue.

On the petition of the respondent, the present chancellor ordered a rehearing on the subject of costs, and after hearing the counsel of the parties, on the 6th of *July* last, was pleased to order and decree, " that the decree of the 8th of *October*, 1813, be reversed and annulled, and that the defendant (present respondent) is not, and shall not be, liable to pay to the complainants the costs in the said decree mentioned, or any part thereof, but that the defendant go quit thereof, &c.; the complainants being left to bear their own costs, and the costs of the former complainant, whose representative they are;" from this decree the complainants below appealed to this court.

*IN ERROR.*

ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

The CHANCELLOR gave the reasons for his order.(a)

*Riggs*, for the respondent, then made a preliminary objection, that no appeal would lie from an order for costs only. The court said they would consider that question, if necessary, after hearing the argument of the appeal.

*Henry*, for the appellant, contended, that the order of the 31st of *May*, 1813, was not a final decree, but a mere interlocutory order,* and referred to the decree of the 23d of *January*, which reserved all further directions, until the coming in of the master's report.    The question as to costs, was reserved.†    The decree of the present chancellor, annulling the order of his predecessor, decides that, if a plaintiff in chancery dies, his representatives have a duty to perform, and rights to maintain, without any power of obtaining a reimbursement of their expenses.

It is not established in *England*, that there can be no appeal for costs, in any case ; though it may be the general rule there.‡

No such rule, however, exists here.    The principle established by this court, is, that there may be an appeal from all orders which conclude the rights of the parties.§

The chancellor says, that the costs which accrued before the death of *Travis*, were a personal duty, and there being no decree for costs, the right to them became extinct at his death. But this is only where the bill of revivor is brought for costs only,‖ and where nothing further is to be done. The maxim, *actio personalis moritur cum persona*, applies only to actions arising *ex delicto*. The court of chancery, in *England*, have regarded the rule there as a hard one, and have sought occasion to take the case out of its operation, and have said, that if there was any thing executory in the decree, or the costs were given out of a particular fund,** there can be no revivor for costs only ; but there may be where there is a duty and costs.††

The respondents having allowed the bill to be taken *pro confesso*, instead of coming in and pleading or demurring, the parties are placed precisely in the situation in which *Ezekiel Travis* stood.‡‡

It may be objected, that the *executors* of *Ezekiel Travis* are not made parties, though two of the appellants are, in fact, his executors.    The omission to make them *qua executors*,

* 1 Bro. P. C. 434. (*Tomlins' ed.*)

† 2 Har. C. Pr. 118,

‡ 1 *Vesey*, 250. *Mosely's Rep.* 395.

§ 1 *Johns. Cas.* 436.  3 *Johns. Rep.* 586.  4 *Johns. Rep.* 528.  9 *Johns. Rep.* 443.

‖ 3 *Vesey*, 589.

** 2 *Vesey*, 468. *Coop. Eq. Pl.* 68. 1 *Bro. Ch. Cas.* 436.
†† *Bunbury*, 45. 160. *Dick. Rep.* 132.  3 *Vesey*, 195.

‡‡ 3 P. *Wms.* 348.

(a) They were the same as delivered by him in chancery, and will be found in the reports of the cases decided in that court.

parties to the suit, is a matter of form; and a bill is never dismissed for want of parties, or on matter of form.*

Costs in equity, rest, it is true, in the sound discretion of the court;† but wherever the material issue between the parties is found for the plaintiff, he shall have his costs at law.‡

*Riggs* and *Baldwin*, contra, insisted, that though a bill of revivor be taken *pro confesso*, that it gave the party, in whose favour the suit was revived, all the rights of the original parties. The rights obtained will depend on the *character* in which the party seeks to revive. If it be as *heir*, *executor*, or *devisee*, he will have the rights belonging to the character of either, as the case may be, and no other.

All the cases to be found in the *English* books, relative to appeals for costs, are from the decisions of the *master of the rolls* to the *chancellor*: and a petition to the chancellor himself, for a rehearing. Not a case is to be found, except the one cited from *Mosely's* reports, of an appeal to the *house of lords*, on a mere question of costs.§ But that case is no authority.

But it is said, though this may be the rule in *England*, it is not the law here. The words of the statute are broad and extensive; but in the construction of them, this court have decided, that an appeal will not lie from every order of the court of chancery. No general rule has been settled, by the adjudications of this court, that embraces this question. This court will consider the circumstances of each case, as it arises. Costs in the court of chancery are at discretion, and where that discretion has been exercised, in principle, there is an end to the question. This court is modelled on that of the *English house of lords*, as a court of appeals, and the decisions of that tribunal have always been regarded as precedents in this court. It would not be expedient, or good policy, for this court to hear appeals from decisions on matters of costs merely. The allowance or disallowance of them, by the chancellor, must depend on the consideration of a variety of circumstances in the court below, which cannot be made to appear here. The court of chancery, in *England*, rarely grants a rehearing for costs only;‖ and never unless in case of mistake or palpable injustice; and even in those cases great caution is used in granting a rehearing.** This court, as it cannot have the same knowledge of all the cir-

IN ERROR.
........
ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

* *Anon.* 2 *Atk.* 15.
† 2 *Atk.* 112.
‡ 1 *Bro. Ch. Cas.* 424, 425.

§ 8 *Bro. Ch. Cas.* 349. MSS. Ear v. *Parnel. Cross* by v. *Shadforth.*.

‖ 1 *Bro. Ch. Cas.* 141. note.

** 2 *Dick. Rep.* 194 1 *Vesey,*250. *Ambl.* 521.

IN ERROR.

ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

cumstances, ought to exercise much greater caution in the allowing of appeals in mere matters of costs.

It is said, that the order of the chancellor, to carry the first decree into effect, was a mere interlocutory order, not a final decree. The decree of the court, on the report of the master, was a *final decree*, for there was a final liquidation of accounts; nothing was left to be ascertained, but the court was prepared and able to pronounce on the whole merits of the cause.* That there was no reservation as to costs, was not the fault of the court, but of the appellant. The decree was at his own instance and application, and being silent as to costs, there is a waiver of them. The omission is not such a matter of form that it could be supplied on application to the court. The decree being final, it cannot be altered, any more than a judgment at law.

A *revivor* determines nothing as to the ultimate rights of the parties.† The cases of *Delaval* v. *Blackett*, and *Dodson* v. *Oliver*,‡ cited by the appellant's counsel, show that an appeal will not lie on a *mere* question of costs. The case of *Hyde* v. *Foster*§ has no application to this question. Where costs are payable out of a particular fund, or where they are given by way of relief, being considered as a *duty*, and not as costs, the court have obliged the representatives of the deceased party to pay the costs, not as within the common rule as to costs, but as relief.||

In regard to this question, it makes no difference whether the decree was final or interlocutory. In chancery, costs no more follow the success of the party, than interest follows the recovery of a debt; they rest in the sound discretion of the court.

It is the established practice of the court of chancery, to reserve expressly, in its decree, whatever is not decided by the court; and if nothing is reserved, there is nothing further to decide.

As to the costs that accrued in the lifetime of *Ezekiel Travis*, they never have been ascertained or decreed, and must, of course, die with his person; and as to the costs which have accrued since, we are willing to pay them.

In *Lloyd* v. *Powis*,** though the bill of *revivor* was dismissed, with costs, yet the court would not allow the defendant, the

* 2 Har. C. Pr. 420. (Decree.)

† 3 P. Wms. 348.

‡ Bunbury's Rep. 45. 166.

§ 1 Dickens, 132.

|| James v. Phillips, 2 P. Wms. 657. 10 Vesey, 573.

** 1 Dick. 16.

heir, the costs which accrued in the lifetime of his father; for it was ruled that they died with the person.

In *Turner* v. *Turner*,* though the infant's bill was dismissed, with costs, yet, on a rehearing, it was dismissed, without costs, by Lord Chancellor *King*.

If costs were decreed in this case, they would not go to the appellants, but to the personal representatives of *Ezekiel Travis*, deceased.† The appellants are not brought before the court as executors or administrators ;‡ there are, therefore, no persons before the court who can claim the costs. But if the costs have not been decreed, they cannot be recovered after the death of the party.§

As to the costs subsequent to the death of *Ezekiel Travis*, the chancellor has decided that each party shall pay his own costs. Costs do not necessarily follow the obtaining an account in equity. There are various cases in which costs are refused.‖

*Henry*, in reply, said that this was a question of great importance to the suitors in chancery; and the rule of refusing costs, in such a case, if sanctioned, would produce great injustice. Suppose a bill filed against a faithless trustee, and it should be made to appear that he was guilty of gross fraud in relation to his trust, and the complainant should die before the final decree; his personal representatives come into court for a revival, and they are told that they may have their rights, but no costs which have accrued. It may be that the costs amount to the value of their rights.

An interlocutory order is granted upon motion, or petition, not on a hearing. A final decree does not depend on the time when it is made, but on its relation to the essence and merits of the cause, after a full hearing of all the parties, and when the object of inquiry has been ascertained and examined. The question as to costs was reserved, by the first decree, in the lifetime of *Ezekiel Travis*; and will a silence on the subject, in the subsequent decree, deprive the appellants of their costs?

In courts of law, judgments are sometimes amended, where interest has been omitted. The equity of the claim of the appellants, for costs, is apparent from the whole proceedings. How can the complainant be said to have slept on his rights, when he was in the peaceable possession of the land for 15

*Margin notes:*
IN ERROR.
ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

* 2 P. Wms. 297.

† Str. 708.

‡ 2 Dickens, 768.

§ Thorne v. Deas, 3 Johns. Rep. 543.

‖ 1 Bro. P. C. (Tomlins' ed.)
12 Vesey, 326.
335. 7 Vesey,
202. 2 Ves. jun.
243. 3 Vesey,
195.

IN ERROR.
........
ALBANY,
February, 1815.
〜〜〜〜〜
TRAVIS
v.
WATERS.

years, until he was disturbed by the litigious spirit of the respondent.

PLATT, J.   The question on this appeal respects, 1st. The costs which accrued prior to the death of *Ezekiel Travis ;* and, 2dly. The costs which have arisen since the appellants became parties upon the bill of revivor.

In examining the claim for costs which arose prior to the abatement of the suit, this consideration is presented ; to wit, that the duty of conveying the land, which was established by the decree of the 27th of *October,* 1808, (and afterwards affirmed in this court,) became separated from the obligation to pay costs, (if any such obligation existed,) when the suit abated by the death of *Ezekiel Travis.*

The conveyance of the land was due exclusively to the heirs and devisees ; and the costs (if any were equitably due) could only be claimed by the executors or administrators of *Ezekiel Travis.*

Upon examining the authorities cited on the argument, (*Hall* v. *Smith,* 1 *Bro. Ch. Cas.* 438.  *White* v. *Haywood,* 2 *Ves.* 461. 1 *Dick.* 173.  *Kemp* v. *Mackrell,* 2 *Ves.* 580.  *Morgan* v. *Scudamore,* 3 *Ves.* 195.  *Lloyd* v. *Powis,* 1 *Dick.* 16., and *Blower* v. *Mowets,* 3 *Atk.* 772.,) it appears to be an established rule in equity, that where there has been no decree for costs, and the suit abates by the death of the party, the right to costs, up to that time, is extinguished, *unless the costs are payable out of a particular fund, or are connected with a duty towards the party claiming costs.*

According to the allegations in the bill of revivor, in this case, which was taken *pro confesso,* the appellants claim only in the character of *heirs* and *devisees* of *Ezekiel Travis ;* it not being averred that any person had accepted or assumed the office of executor or administrator.  It follows, therefore, that the appellants have no right to the costs which accrued in the lifetime of *Ezekiel Travis ;* because those costs, if allowable, are due to his *personal representatives ;* and although the executors might have been joined with the heirs and devisees in the bill of revivor ; yet it is clear, that they must, in such case, be deemed parties for *entirely distinct objects.*   The heirs and devisees sue for the conveyance of the land, and the executors for the costs of the original suit only.

IN ERROR.

ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

To test the rule, therefore, let us suppose that, upon the death of *Ezekiel Travis*, *Waters* had voluntarily conveyed the land to the appellants; and the executors of *Ezekiel Travis* had then filed their bill of revivor for costs of the original suit; could the suit have been revived for the purpose of obtaining those costs? I think not. It would have been a bill of revivor *for costs only;* and as no decree had passed for costs, before the suit abated, the claim for costs *moritur cum persona.*

Whether the executors alone attempt to revive the suit, or whether they join with the heirs for that purpose, their object would be, in both cases, *singly for costs*, unconnected with any other duty as to them; not payable from any fund, and not within any of the exceptions to the general rule, which is common to courts of law and equity, that where the suit abates before judgment or decree, the claim for costs is extinguished.

It would, therefore, have been useless to have directed the bill to lie over till the executors or administrators, if any, should be made parties; nor was it necessary for *Waters* to plead or demur to the bill of revivor, for the want of proper parties, because the claim of the executors for costs must have been unavailing. Besides, it is never necessary to plead or demur to a bill, if the bill itself contains no equity, which is the case in this bill of revivor, in regard to costs in the abated suit.

Whether the appellants would have been entitled to the costs which accrued since the death of *Ezekiel Travis*, if their proceedings had been regularly conducted for that object, I deem it unnecessary to decide. It is certain, however, that a very broad discretion belongs to the chancellor in regard to costs, and that the right to costs is by no means a necessary consequence of the relief prayed for and obtained; on the contrary, there are many cases where equity grants the relief sought for, upon condition of paying costs to the defendant.

The rule of practice, in equity, is, that if the *final decree* be silent as to costs, and the question of costs is not *expressly reserved*, the court will not listen to a subsequent application for costs, except it be on a rehearing upon the merits, which is sometimes applied for merely for the purpose of introducing such a reservation as to costs. (*Herle* v. *Greenbank*, 1 *Dick.* 370.)

IN ERROR.
........
ALBANY,
February, 1815.
~~~~~
TRAVIS
v.
WATERS.

A question has been made, whether the decree of the 31st of *May*, 1813, was *final* or *interlocutory?*

According to *Harrison's Practice in Chancery*, (622.,) " A decree is *final*, when all the circumstances and facts material and necessary to a complete explanation of the matters in litigation are brought before the court, and so fully and clearly ascertained by the pleadings on both sides, that the court is enabled, from them, to collect the respective merits of the parties litigant, and upon full consideration of the case made out and relied upon by each, determines between them, according to equity and good conscience."

" A decree is *interlocutory*, when it happens that some material circumstance or fact, necessary to be made known to the court, is either not stated in the pleadings, or so imperfectly ascertained by them, that the court, by reason of that defect, is unable to determine *finally* between the parties; and, therefore, a reference to, or an inquiry before, a master, or a trial of the facts before a jury, becomes necessary to have the doubts occasioned by that defect removed. The court, in the mean time, suspends its *final judgment*, until, by the master's report, or the verdict of a jury, it is enabled to decide *finally.*"

According to these definitions, it seems to me his honour, the chancellor, was correct in deciding, that the order of the 31st of *May*, 1813, is to be regarded as the *final decree* in this cause.

By the *bill*, *Travis* claimed a conveyance for the whole parcel of land originally contracted for, and insisted upon certain payments in money, oxen, and turnips. By the *answer*, *Waters* denied any payments made on account of the land; and, as to part of the premises in question, he alleged, as a defence, that he had, with the consent of *Ezekiel Travis*, conveyed 50 acres of it to one person, and 150 acres to another, (not naming who those persons were.)

All the facts stated by way of excuse, or defence, in the answer, were put at issue by a *general replication*.

The chancellor ordered a trial of feigned issues, to ascertain,

1st. Whether *Travis* paid 60 pounds, in *May*, 1787, as part consideration of these lands?

2d. Whether, in *June*, 1807, *Travis*, in like manner, paid 12 pounds?

IN ERROR.

ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

3d. Whether, in *November*, 1807, *Travis*, in like manner, paid a yoke of oxen, valued at 16 pounds?

The verdict upon each of these issues was in favour of *Travis*, thereby establishing the fact of those *three* payments, on account of this land, at the times there stated; but it must here be remarked, that the two other material facts put in issue by the pleadings, were perfectly *unascertained*, when the chancellor made the decree of the 27th of *October*, 1808.

By the appellant's case, it is expressly stated, that " the defendant below made no proof of the conveyances alluded to in his answer, nor of the partition with *David Johnson*, nor of any other conveyances, except that two discredited witnesses said, in general terms, that *Waters* had sold so many acres of this land with *Travis*'s consent." Nor was there any inquiry made, nor any evidence received, upon the interrogatories in the cause, in regard to the *quantity* or *value* of the *turnips* stated to have been delivered in part payment for the land.

By the *interlocutory* decree (as I consider it) of the 27th of *October*, 1808, it was ordered, " that the defendant convey to the complainant, in fee, and in severalty, by a good and sufficient deed in the law, so much of the lands contained in said lot, No. 39, not exceeding three fourths of one half of the said lot, as the said defendant hath not become incapacitated to convey, by reason of the partition, and of the release and conveyances aforesaid; and that it be referred to a master to take an account of the quantity of land, part of said lot, which is to be conveyed as aforesaid." And further, that the master state an account, charging the land at eight shillings per acre, with interest, and crediting the *three* several payments found upon the feigned issue, with interest; and, also, directing the master to report as to the amount of the *turnips* sold by *Travis* to *Waters.*

This reference to the master, therefore, was not merely to calculate interest, and state an account upon *fixed data;* on the contrary, that reference involved an inquiry, by the master, whether *Travis* had, or had not, made a payment in turnips, on account of the land; and, if any, to what amount? It also involved, not merely a survey, but an inquiry whether *Waters* had executed a deed or deeds of conveyance for any part, and how much, of the premises in question, to any other person, as

IN ERROR.
......
ALBANY,
February, 1815.

TRAVIS
v.
WATERS.

set forth in his answer; no such conveyance ever having been proved or exhibited.

It is clear, therefore, that, by the pleadings, and the facts found by the verdict on the feigned issues, it did not fully appear how much had been paid by *Ezekiel Travis*, on account of the land; nor did it appear how much of the land contracted for, *Waters* remained capacitated to convey. These essential facts remained to be ascertained by the master's report, before a *final decree* could be pronounced.

The decree of the 31st of *May*, 1813, was founded on the master's report, and the other interlocutory proceedings in the cause. It finally settled the respective rights of the parties, upon the whole merits; and consummated the suit, by ordering *Waters*, upon payment to him of 13 dollars and 24 cents, to convey to the appellants, "the parcel of land in the said report, particularly mentioned and described," in the proportions previously settled.

This decree was taken by the appellants *ex parte*, as advised by their counsel; and must be considered as allowing them all that they asked for. No further equity was reserved. The appellants paid to *Waters* the balance reported to be due to him, and he obeyed the decree in executing the conveyance to them.

As I understand the practice, the solicitor for the complainants was irregular in entering that order or decree, *ex parte, in vacation, without notice to his adversary.* *Waters* might have obtained an order to vacate it for irregularity; but he waived that objection; that is, he admitted the decree to be of the same force and effect, as if it had been entered upon a hearing after regular notice.

According, therefore, to the settled practice in chancery, which is similar in analogous proceedings at law, the claim for costs was waived by the appellants in taking a final decree for the land without reservation: and that claim could never be revived, but upon an application to open the final decree upon its merits. Such an application was never made: on the contrary, the appellants actually demanded and accepted a performance of that decree; and after the decree was thus completely executed, a rehearing, if applied for, would not (I presume) have been granted.

I am not prepared to say, that an appeal will not lie, in any case, for *costs only.* But, in this case, the motion for costs is

IN ERROR.
.......
ALBANY,
February, 1915.

TRAVIS
v.
WATERS:

to be considered as an application to be reinstated in a claim which had been waived; or as a motion to excuse a *laches* or *default* of the party claiming costs: and, in that view, I think the order of the chancellor, refusing such *indulgence* upon a point of practice merely, is not a subject of appeal under our constitution, and the statute regulating appeals.

By that statute, "any person aggrieved by any order or decree in chancery, may appeal," &c.

To be "*aggrieved*," is to be "*injured in one's right*;" and a person who waives his claim, suffers *damnum absque injuria*, and cannot be legally said to be "*aggrieved*."

The appellants have lost their right to claim costs, by their own *laches*, or default, in not asserting their claim according to the regular course of proceeding in chancery: and in the late case of *Sands* v. *Hildreth*, in this court, it was decided, that if a party be concluded of his rights *by his own default* in the court below, this court will not sustain an appeal for the purpose of reinstating him.

I am, therefore, of opinion, that the order appealed from ought to be *affirmed*.

THOMPSON, Ch. J., VAN NESS, J., and YATES, J., were of the same opinion.

ARNOLD, BICKNELL, CANTINE, RADCLIFF, STEWART, TIBBITS, and VERBRYCK, *Senators*, also concurred.

SPENCER, J., said, that as to the preliminary question, he thought the *English* House of Lords would not entertain an appeal for costs merely. It was, however, more a question of practice than principle; and though appeals ought not to be encouraged, he was inclined to the opinion, that, under the provisions of our statute, an appeal might lie from a decree for costs.

As to that part of the decree of the chancellor, relative to the costs which accrued during the lifetime of *Ezekiel Travis*, he thought it correct; but as to the costs subsequent to the bill of revivor, he was of opinion, that the decree, so far as respected the disallowance of those costs, ought to be reversed.

IN ERROR.
......
ALBANY,
February, 1815.

CLARK, CROSBY, PRENDERGAST, ROSS, SWIFT, TABOR, VAN SCHOONHOVEN, and WENDELL, *Senators*, concurred.

A majority of the court being of opinion, that the decree of the court of chancery ought to be affirmed, it was thereupon ORDERED, ADJUDGED, and DECREED, that the decree of the court of chancery be affirmed; that the petition and appeal be dismissed, and that the appellants pay to the respondent his costs, to be taxed by the clerk of this court; and that the respondent have his execution therefore out of the court of chancery; and that the record be remitted, &c.

*Judgment of affirmance.*