SARAH H. BARNES et al., Respondents and Appellants, *v.* MIDLAND RAILROAD TERMINAL COMPANY, Appellant and Respondent.

Highways — obstructions of a highway across part of its width only are not sufficient to operate as an extinguishment of the public right therein — action to restrain obstructions to a highway as a nuisance and for the recovery of damages — loss of profits as an element of damages — erroneous interlocutory judgment granting an injunction — when injunction should be modified — improper award of damages — costs.

1. If a highway remains closed for six years with the acquiescence of the public, there is an extinguishment of the public right, but obstructions of a highway across part of its width only, narrowing

but not closing the line of travel, are not sufficient, however long continued, to put an end to its existence. To have that effect the obstruction must cover the entire width; it is not, however, necessary to show an abandonment along the entire length. These rules have no application where the fee is vested in the public.

2. Loss of profits resulting from a nuisance is, under the circumstances of this case, an element to be considered in any estimate of the damages to be awarded a party injured thereby, and in an action to recover damages for maintenance of a nuisance, a gross award may be made to plaintiffs jointly, whose titles and interests are several and different. If plaintiffs are satisfied therewith, a defendant is not aggrieved thereby since it is not concerned as to the method by which the plaintiffs divide the money among themselves.

3. This action is brought to restrain the continuance of a nuisance and for the recovery of damages. The nuisance complained of is the obstruction of part of the foreshore of Staten Island and of the Sea Side boulevard. The referee granted an interlocutory judgment restraining the defendant from obstructing the passage of the public between high and low-water mark in front of the defendant's uplands; restraining the obstruction of the boulevard, and directing a further reference to ascertain the damages. The report of the referee to ascertain the damages which gave the costs of the action to the plaintiff was confirmed at Special Term. At the Appellate Division the award of costs was modified, and in other respects the final judgment affirmed. The case comes up on cross-appeals. *Held,* that this was not a case for an interlocutory judgment since the extent of the damages was one of the issues to be disposed of on the trial, but by reason of the acquiescence of the parties objection to this form of procedure must be deemed to have been waived. *Held, further,* that the injunction granted plaintiffs was too broad in its terms and should be modified so as to conform to the views expressed in the opinion, and that improper elements were allowed to enter into the award of damages.

4. The statute contemplates that the award of costs in equitable actions shall be guided and regulated by a determination of all the issues. (Code Civ. Pro. § 1022.) Until there has been such a determination in truth, and not merely in form, the power of the court survives, and the exercise of its discretion may be manifested by the final judgment (Code Civ. Pro. § 3230), and a court of equity may give weight to a partial failure of the action in determining the incidence of the costs. Hence, where, as in this case, the question of damages was not finally determined owing to the

error in procedure, the question of costs is open and to be disposed of in the final judgment.

*Barnes* v. *Midland R. R. Terminal Co.,* 161 App. Div. 621, reversed.

(Argued March 20, 1916; decided May 2, 1916.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 17, 1914, modifying and affirming as modified a final judgment in favor of plaintiffs entered upon the report of a referee with notice of intention to bring up for review the affirmance by the Appellate Division of an interlocutory judgment.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Brooks Leavitt* and *Albert H. Atterbury* for plaintiffs, respondents and appellants. When a landlord and tenant, who, together, represent the whole interest, are willing to apportion as between themselves the damages to the whole, and come into a court of equity and obtain an injunction in their favor against a nuisance to the whole interest, they should be able to have a judgment for damages as if they constituted one person. (*Shephard* v. *Man. Ry. Co.,* 117 N. Y. 442; *Marie* v. *Garrison,* 83 N. Y. 14; *Brett* v. *First Univ. Soc.,* 5 Hun, 149; 64 N. Y. 651; *Jacobs* v. *N. Y. Cent. R. R. Co.,* 107 App. Div. 134; 180 N. Y. 586.) The damages awarded were warranted by the evidence. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205; *Smalling* v. *Jackson,* 133 App. Div. 382; *Hall Sons Co.* v. *Sund. & Strat. Co.,* 138 App. Div. 548; *Egan* v. *Browne,* 128 App. Div. 184; *Bly* v. *Edison Elec. Ill. Co.,* 111 App. Div. 171; *Herman* v. *Pierce Co.,* 105 App. Div. 16; *Schriver* v. *Vil. of Johnstown,* 71 App. Div. 232; 148 N. Y. 658; *Bates* v. *Holbrook,* 89 App. Div. 548; *St. John* v. *Mayor, etc.,* 6 Duer, 315; 13 How. Pr. 527; *Bagley* v. *Smith,* 10 N. Y. 489.) The reduction by the

Appellate Division of the costs awarded to the plaintiffs by the trial court, and confining them to the costs after the interlocutory judgment was error. (*Osborn* v. *Cardeza*, 208 N. Y. 134; *Hollenbeck* v. *Donnell*, 94 N. Y. 342.)

*Alton B. Parker, Alfred G. Reeves, Alexander S. Rowland* and *William P. Dalton* for defendant, appellant and respondent. The injunction granted is fundamentally contrary to the law of this case in that it violates defendant's rights in the foreshore which are necessary to enable it to make a reasonable use of its upland. (*Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y. 378; *Mennanes* v. *Breadaldane*, 3 Bligh [N. S.], 414; *Rex* v. *Peghan*, 8 B. & C. 355; *Gerrish* v. *Clouth*, 48 N. H. 9; *Pierce* v. *Kinney*, 59 Barb. 56; *Slater* v. *Fox*, 5 Hun, 544; *Matter of City of Buffalo*, 206 N. Y. 319; *Little* v. *Galles*, 39 App. Div. 646; *Lyon* v. *Botchford*, 25 Hun, 57; *Chamberlain* v. *Douglas*, 24 App. Div. 582; *Loomis* v. *T. F. R. Co.*, 38 Hun, 517; *Griffith* v. *Dodgson*, 103 App. Div. 542; 10 Ency. Pl. & Pr. 1023; *Attorney-General* v. *Chambers*, 4 De Gex, M. & G. 206; *Shively* v. *Bowlby*, 152 U. S. 1; *Saulet* v. *Shepherd*, 71 U. S. [4 Wall.] 508.) The plaintiffs are not entitled to the injunction as to the alleged Sea Side boulevard. (*Demarest* v. *Darg*, 32 N. Y. 281; *Williams* v. *Barkley*, 165 N. Y. 48; Freeman on Judgments, § 325; Wells on Res Adjudicata, § 2; *Fairchild* v. *Fairchild*, 64 N. Y. 471.) Plaintiffs cannot recover any damages in this action, because they own different parcels of the property alleged to be damaged, and different interests in the same parcels. (*Everett* v. *Everett*, 180 N. Y. 452; *Miller* v. *Edison Elec. Ill. Co.*, 184 N. Y. 17; *Bly* v. *Edison Elec. Ill. Co.*, 172 N. Y. 1.) The plaintiffs are not entitled to damages as awarded in the final judgment. (*Camparetti* v. *Union R. Co.*, 95 App. Div. 66; *Saperstone* v. *Rochester R. Co.*, 25 App. Div. 285; *Witherbee* v. *Meyer*, 155

N. Y. 446; *Reisert* v. *City of New York*, 174 N. Y. 196;
*Hall Sons Co.* v. *Sunshon*, 138 App. Div. 548; *Avery* v.
*N. Y. C. & H. R. R. R. Co.*, 106 N. Y. 142.)  The judg-
ment and orders appealed from are correct if at all as to
the matter of costs.  (*Osborn* v. *Cardeza*, 208 N. Y. 131;
*Nassau Bank* v. *Nat. Bank*, 32 App. Div. 268; *Smith* v.
*Smith*, 121 App. Div. 480; *Eldred* v. *Eames*, 115 N. Y.
401; *Townsend* v. *N. Y. Life Ins. Co.*, 4 N. Y. Civ. Pro.
Rep. 398; Edwards on Referees, 17; *Kahn* v. *Schmidt*,
83 Hun, 541.)

CARDOZO, J.  The action is brought to restrain the con-
tinuance of a nuisance and for the recovery of damages.
The nuisance complained of is the obstruction of part of
the foreshore of Staten Island, and of the Sea Side Boule-
vard which is said to be a highway running along the
uplands.  The case was before this court on an earlier
appeal (*Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y.
378).  In an opinion by Judge WERNER, we defined the
relative rights of the littoral owner on the one hand and
the public on the other.  We held that the littoral owner
has the right to construct a pier in order to provide a
means of passage from the upland to the sea; that the
public must submit to any necessary interference with
their right of passage over the foreshore; but that unnec-
essary obstruction is an invasion of the public right.  A
new trial followed.  The referee granted an interlocutory
judgment restraining the defendant from obstructing the
passage of the public between high and low-water mark
in front of the defendant's uplands; restraining the
obstruction of the Sea Side Boulevard; and directing a
further reference to ascertain the damages.  The inter-
locutory judgment was affirmed at the Appellate Division
(147 App. Div. 89).  The same referee was appointed to
ascertain the damages.  He fixed them at $30,753.43,
and his report was confirmed at Special Term.  On his
recommendation, the Special Term gave the costs of the

action to the plaintiffs. At the Appellate Division the award of costs was modified, and in other respects the final judgment was affirmed (161 App. Div. 621). The case is here on cross-appeals.

(1) The defendant complains that the injunction restraining its use of the foreshore is too broad. We think there is merit in the criticism. The defendant is restrained from "obstructing the passage of the public *under* or *over* its pier at its beach known as Midland Beach, in the county of Richmond, between the lines of high and low water mark as they now exist or hereafter shall exist." That restraint, literally and rigorously enforced, might work injustice. There are railings along the sides of the pier, which have been found to be necessary, except as the pier approaches high-water mark, for the protection of the public. A right of passage over the pier would compel those railings to come down. If passage under the pier is free and substantially unobstructed over the entire width of the foreshore, the plaintiffs are entitled to no more. The pier was not built for their use, and is not to be maintained for their convenience (*Weems Steamboat Co.* v. *People's Steamboat Co.*, 214 U. S. 345). But the passage under the pier must be free and substantially unobstructed over the entire width of the foreshore. This means that from high to low-water mark it must be at such a height that the public will have no difficulty in walking under it when the tide is low or in going under it in boats when the tide is high. If at any point it is too low, it should be raised to the required height; and until raised, there should be a substituted right of passage over the pier where passage under it is impeded. We find it difficult to determine from this record whether the height of the pier as now constructed is adequate at all points. The line of high water has moved outward, and the impediments to-day are not the same as those of 1905 when the action was begun. Even if the height is adequate to-day, the advancing and

receding beach may make it inadequate hereafter. The plaintiffs are entitled to have the principle declared by which in changing circumstances their rights are to be gauged. The principle is that interference with the right of passage must be limited by necessity; that a pier is an unnecessary obstruction unless there is free passage under it over the entire width of the foreshore; that it must be maintained at a height which will make such passage possible; and that if at any point it does not comply with these requirements, then, until it is made to comply with them, there must be, at such points, a right of passage over it.

Other provisions of the judgment affecting the enjoyment of the foreshore are criticized on like grounds. The defendant is not only restrained from obstructing passage under or over the pier. It is restrained generally from "obstructing in any manner the passage of the public over any other portion of its said beach between the lines of high and low water mark, as they now exist or hereafter shall exist." The effect of this injunction, literally and rigorously enforced, might be to prevent the defendant from constructing a second pier. The judgment should preserve to the defendant those rights in the foreshore essential, under our previous decision, to its enjoyment of the uplands.

We think, therefore, that the injunction should be modified so as to restrain the defendant "from obstructing the passage of the public under its pier at Midland Beach between the lines of high and low water mark, as they now exist or hereafter shall exist; from maintaining its pier in such a form as to interfere with such passage over the entire width of foreshore between the lines aforesaid; and from denying to the public passage over its pier at any point where passage under it is now or shall hereafter be obstructed." It should also be restrained from "obstructing in any manner the passage of the public over any other portion of its said beach

7

between the lines of high and low water mark as they now exist or hereafter shall exist, except by the erection of piers or like obstructions necessary to the reasonable enjoyment of its uplands, and so erected as to involve a minimum degree of interference with the public right of passage." If these provisions are construed in the light of this opinion, we think their meaning will not be doubtful.

(2) The defendant complains of the injunction which restrains it from maintaining "any building or structure of any kind within the limits of the Sea Side Boulevard." It insists that Sea Side Boulevard has not been proved to be a public highway. This court has jurisdiction to pass upon that question, for the Appellate Division was not unanimous in affirming the interlocutory judgment. We think there is evidence of a dedication to public uses, and that the land was once a highway. But the question remains whether through non-user the highway has been abandoned. The statute says that "all highways that have ceased to be traveled or used as highways for six years shall cease to be a highway for any purpose" (L. 1861, ch. 311, now embodied in Highway Law, § 234; Consol. Laws, ch. 25). The closing may have been a wrongful act. None the less, if for six years the highway remains closed with the acquiescence of the public, there is an extinguishment of the public right (*Horey* v. *Village of Haverstraw,* 124 N. Y. 273; *Excelsior Brick Co.* v. *Village of Haverstraw,* 142 N. Y. 146; *City of Buffalo* v. *D., L. & W. R. R. Co.,* 68 App. Div. 488; 178 N. Y. 561; *Robins Dry Dock & Repair Co.* v. *City of N. Y.,* 155 App. Div. 258; 213 N. Y. 631). Obstructions of a highway across part of its width only, narrowing but not closing the line of travel, are not sufficient, however long continued, to put an end to its existence (*Mangam* v. *Village of Sing Sing,* 26 App. Div. 464; affd. on opinion below, 164 N. Y. 560). To have that effect the obstruction must cover the entire width. But if the entire width is blocked, the

obstructed section ceases to be a highway, even though other sections are unobstructed. It is not necessary to show an abandonment along the entire length (*Horey* v. *Village of Haverstraw, Excelsior Brick Co.* v. *Village of Haverstraw, City of Buffalo* v. *D., L. & W. R. R. Co., supra; Mangam* v. *Village of Sing Sing,* 11 App. Div. 212). These rules have no application where the fee is vested in the public (*N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo,* 200 N. Y. 113, 119, 120). But there is no claim that the public right in this road was ever greater than an easement.

It is impossible to hold that the Sea Side Boulevard has remained a highway from one end to the other. There are parts of it which may be found, consistently with the evidence, to be a highway to-day. There are other parts which had been closed by the defendant's structures for more than six years before this action was begun. The public authorities acquiesced. The plaintiffs acquiesced. The barriers were not mere encroachments upon part of the highway; they covered its entire width. That is true of the Casino, which was built in 1897. It is true of the bathhouse northeast of the Casino. It is true of the scenic railroad. To accommodate the deflected travel, a new road, Ocean avenue, was built by the defendant a little to the west. The use of the old highway was impossible. That conclusion is not left to doubtful inference. It is established by the testimony of the plaintiffs and the plaintiff's witnesses. Indeed, the referee has found that the structures erected in 1896 and 1897 were of such a nature "that the use by the public of said Boulevard at the places of such encroachments ever since has been and is now prevented." The judgment does not discriminate between structures which are mere projections into the Boulevard and structures which cover it from side to side. It commands the removal of them all. But at those places where the highway has been completely obliterated, if not elsewhere, the lapse of time has extinguished the public

right. Either there must be a new trial to determine more accurately the traveled portions of the highway, or else the plaintiffs must consent that the judgment be modified by striking out the injunction restraining the use by the defendant of the land within the Boulevard. The use of that land did not become lawful, however, until the expiration of six years following the year 1897, and the modification of the injunction will not prejudice the plaintiffs' right to damages for the years when the use remained unlawful.

(3) The defendant complains that a gross award of damages was made to plaintiffs whose titles and interests are several and different. The lands affected by the nuisance are owned by the plaintiffs Barnes in fee. The plaintiff Putnam at the commencement of the action had an interest in part of the lands as lessee, but there is a finding, unanimously affirmed, that by consent the lease was terminated. No objection of misjoinder on the ground that the plaintiffs were not entitled to unite in the maintenance of the action was taken either by answer or by demurrer. The only objection was that other parties should be added. The referee, assessing the damages at a gross sum,· has awarded them to the plaintiffs jointly. We have no doubt that it would have been within his power to apportion the damages, and to render several judgments in favor of the plaintiff Putnam for one part and in favor of the other plaintiffs for another (*Koehler* v. *N. Y. El. R. R. Co.*, 159 N. Y. 218, 224). A different conclusion would do violence to the principle that " when a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes and proceed to a final determination of all the matters at issue " (*McGean* v. *Met. E. R. Co.*, 133 N. Y. 9, 16; *Shephard* v. *Man. Ry. Co.*, 117 N. Y. 442). But if the referee fails to make the apportionment, and the plaintiffs are satisfied with a gross award, the defendant is not aggrieved. Collectively, the plaintiffs are the

owners of every interest in this property affected by the nuisance. If the defendant pays them, it can never be required to pay any one else. It is not concerned with the method in which they divide the money among themselves.

(4) The defendant complains that the damages are excessive. We do not doubt that loss of profits resulting from the nuisance is an element to be considered in any estimate of the damages (*French* v. *Conn. River Lumber Co.*, 145 Mass. 261; *Weinman* v. *de Palma*, 232 U. S. 571, 575; *Bates* v. *Holbrook*, 89 App. Div. 548; *St. John* v. *Mayor, etc., of N. Y.*, 6 Duer, 315; *Bagley* v. *Smith*, 10 N. Y. 489.) The defendant has no ground for complaint, because it is impossible to measure them to a nicety. But the difficulty is that the referee has found the buildings in the Boulevard to be a nuisance, and his estimate of the damage must have been affected by the error. Undoubtedly, the buildings in the Boulevard were a nuisance until the lapse of six years had extinguished the public right; but since then they have been lawful. The referee has made a gross award for all the acts which he condemns. We cannot say how much of the award is based upon the finding that there is an illegal obstruction of the Boulevard, and how much upon the finding that there is an illegal obstruction of the foreshore. The truth seems to be that of late years the obstruction of the foreshore has been slight and possibly insignificant. Much of the loss of business has probably been due to the obstruction of the board walk. Pleasure seekers at the beach, finding a barrier across the walk, would often go no farther even though there was room beneath the pier. The board walk, however, is back of the line of high water, and its barriers are lawful. The defendant may be liable for loss of profits, but only for those that are fairly to be attributed to its wrong. The referee has not discriminated between the consequences of legal, and those of illegal, obstructions. The entire

loss of profits for eleven years has been charged to the
defendant.   During the early years, when the Boulevard
was still a highway, and when there were still barriers
beneath the pier, a nicer apportionment of the damages
may have been needless and indeed impossible.   But in
later years, with the abandonment of the highway, the
extension seaward of the line of high water and the
removal of the barriers beneath the pier, there has been
need of closer discrimination.   If the obstruction of the
board walk is lawful, and the obstruction of the foreshore
has been diminished and perhaps removed, the obstruc-
tion of the Boulevard may have controlled the estimate
of the damages.   It is true that the final judgment,
unlike the interlocutory judgment, has been unanimously
affirmed.   None the less, we have the right to look into
the evidence in order to ascertain whether the error in
respect of the public easements in the Boulevard may be
disregarded as immaterial (*Matter of Farley* v. *Wurz*,
217 N. Y. 105).   We think it ought not to be disregarded,
and that there must be a re-assessment of the damages.

In thus holding, we are not to be understood as approv-
ing the practice by which the trial has been split into two
parts.   This was not a case for an interlocutory judgment.
The plaintiffs were entitled to an injunction and to dam-
ages.   The referee determined their right to an injunc-
tion, and directed another reference to ascertain the dam-
ages.   In other words, he passed upon some of the issues,
and refused to pass upon the others.   The defendant was
not under any duty to render an accounting (*Marvin* v.
*Brooks*, 94 N. Y. 71).   Indeed, the interlocutory judg-
ment did not in any true sense direct it to account.   It
had created a nuisance from which the plaintiffs had
suffered special loss, and it was liable for the damage
The extent of that damage was one of the issues to be
disposed of on the trial just as much as the creation of
the nuisance or any other element of the plaintiffs' cause
of action (*Doyle* v. *Met. El. Ry. Co.*, 136 N. Y. 505;

*Standard Fashion Co.* v. *Siegel-Cooper Co.*, 44 App. Div. 121, 133). But the error in thus subdividing the trial must now, we think, be disregarded. Neither party has complained of it at any stage of the litigation. By acquiescence, they have consented that the damages be ascertained through the agency of a separate reference. Objection to the form of procedure must be held to have been waived.

(5) We are now brought to the plaintiffs' appeal. It grows out of the modification of the judgment for costs. It presents a question of power which will arise again on the new hearing to ascertain the damages. We should, therefore, pass upon it now. The referee was appointed to "hear, try and determine the issues." His first report directed an interlocutory judgment. That judgment defined the plaintiffs' rights in the foreshore and the Boulevard; it gave the plaintiffs "such damages as they or either of them shall be found upon an accounting thereof to have sustained by reason of the acts of the defendant;" and it referred the case to the same referee to "ascertain and report to the court the amount of any damage so sustained by the plaintiffs or either of them." Nothing was said about the costs. The plaintiffs moved to send the case back to the referee with directions to pass upon the question of costs, but the motion was denied for want of power. From that order the plaintiffs appealed to the Appellate Division. They also appealed from the interlocutory judgment in so far as it failed either to award costs or to refuse them. Both the order and the interlocutory judgment were affirmed. The reference to ascertain the damages proceeded. The referee reported that costs of the entire action should be awarded to the plaintiffs. It is plain from his report that in directing the interlocutory judgment he had not understood that his silence about the costs would be construed as equivalent to a refusal to award them. The Special Term confirmed the referee's report, and final judgment

was entered.   The costs with an extra allowance were more than $7,500.   On appeal from that judgment, the Appellate Division struck out all the costs except those incurred after the interlocutory judgment.   Its view was that an interlocutory judgment, which neither awards costs nor expressly reserves them for further consideration, must be deemed to have refused them, and there is no power thereafter to award them by the final judgment.

We held in *Osborn* v. *Cardeza* (208 N. Y. 131) that when, in an action for an accounting, costs are granted to the plaintiff by an interlocutory judgment, which has been affirmed at the Appellate Division, it is too late for that court upon a review of the final judgment to divest the plaintiff of his accrued right and take the costs away. The interlocutory judgment in that case was made upon the report of a referee.   We pointed out that under the statute (Code Civ. Pro. § 1022) " the report of a referee upon the trial of the whole issues of fact " must award or deny costs, where costs are in the discretion of the court; and we held that the award when made had, in later stages of the action, the same binding force as any other branch of the decision.

In that case there was no question of the referee's right to direct an interlocutory judgment (208 N. Y. at 135). There was also no question that his report, which determined the plaintiff's right to an accounting and directed a further reference to take and state the account, was a determination of all the issues triable at that time.   In the case at bar, we have a very different situation.   The result of the interlocutory judgment, as we have seen, is to split into two parts a trial that should have been single and undivided (*Doyle* v. *Met. El. Ry. Co.*, *supra*).   The issues will not be completely tried until the damages have been determined; and until the issues have been tried, the question of the costs is open.   These considerations make it unnecessary to determine whether in a true case of an accounting an interlocutory judgment may be

deemed, if silent about costs, to reserve them by implication for adjudication by the final judgment (*Travis* v. *Waters*, 1 Johns. Ch. 85; *Same* v. *Same*, 12 Johns. 500; *Deitch* v. *Staub*, 115 Fed. Rep. 309, 316; Daniell's Chancery Practice [6th Am. ed.], 1368). We place our decision upon the facts of the case before us. In making his preliminary report, the referee fulfilled a part and only a part of the duty imposed upon him by the order of reference. The parties by their acquiescence waived the errors of procedure; but their acquiescence cannot change the fact that until in some way or through some agency the damages have been ascertained, the trial is incomplete. Not till then can it be known that the plaintiffs have suffered a real loss, and are engaged in something more than the vindication of a barren right. The statute contemplates that the award of costs in equitable actions shall be guided and regulated by the determination of all the issues (Code Civ. Pro. § 1022). Until there has been such a determination in truth, and not merely in form, the power of the court survives, and the exercise of its discretion may be manifested by the final judgment (Code Civ. Pro. § 3230).

The Appellate Division struck out the costs and allowance on the ground of want of power to award them. We think the power exists; but the costs are discretionary, and it is not for us to say whether the power should be exercised (*Husted* v. *Van Ness*, 158 N. Y. 104). That question must be determined by the Special Term upon the entry of the final judgment. It will exercise its discretion in the light of our modification of the interlocutory judgment. As a result of that modification, the plaintiffs have only partially prevailed. They sued to enjoin the obstruction of the shore and the highway. They are successful as to the shore only. A court of equity gives weight at times to a partial failure of the action in determining the incidence of the costs (*Law* v. *McDonald*, 9 Hun, 23; *West* v. *City of Utica*, 71

Hun, 540). Sometimes the disbursements are appor-
tioned (*Swift* v. *Kortrecht*, 112 Fed. Rep. 709, 715;
*Blassengame* v. *Boyd*, 178 Fed. Rep. 1, 4). But there
is no invariable formula.

The judgment of the Appellate Division upon appeal
from the final judgment of the referee, and its judgment
upon appeal from the interlocutory judgment, should be
reversed, and a new trial granted, unless the plaintiffs
stipulate to modify the interlocutory judgment in the
manner stated in this opinion. If such a stipulation is
given, then, as so modified, the interlocutory judgment
should be affirmed; the final judgment should be reversed;
and a referee appointed to ascertain and report the dam-
ages resulting to the plaintiffs from the defendant's
wrongful acts. No costs in this court are allowed to
either party.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDE-
BACK, SEABURY and POUND, JJ., concur.

Judgment accordingly.