(177 App. Div. 742)

### DINKEL & JEWELL CO. v. VILLAGE OF TARRYTOWN.

(Supreme Court, Special Term, Rockland County.   July 11, 1916.)

HIGHWAYS ⬤➡79(1)—ABANDONMENT—EVIDENCE.

Where plaintiff in 1905 built a gate entirely across a highway, and kept it locked nights, Sundays, and holidays, and the way was used only in plaintiff's business, and plaintiff posted a sign "Private Property, No Trespassing," after which no street work was done there without plaintiff's consent, the way after six years was abandoned, and became plaintiff's property, under Consol. Laws, c. 25, § 234, providing for abandonment of highways, even though the original closing may have been wrongful.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 279, 283, 286, 287; Dec. Dig. ⬤➡79(1).]

Action by the Dinkel & Jewell Company against the Village of Tarrytown. Judgment for plaintiff.

Briggs & Griffin, of Tarrytown, for plaintiff.
Clarence S. Davison, of Tarrytown, for defendant.

TOMPKINS, J.   I think the proofs establish the fact that Wildey street was originally laid out, opened, worked, and used to the Hudson river, but that part of it in question in this suit, namely, the part west of the present gates, ceased to be a part of the public highway several years prior to the commencement of this action. The statute provides that:

"Every highway that shall not have been traveled or used as a highway for six years shall cease to be a highway," and "every public right of way that

shall not have been used for said period shall be deemed abandoned as a right of way."

In the case of Barnes v. Midland Railroad Terminal Company, 112 N. E. 926, it was decided by the Court of Appeals that:

"If the entire width of a highway is blocked at any point, the obstructed section ceases to be a highway, though other sections are unobstructed, and it is not necessary to show abandonment along its entire length."

In this same case, it was decided that:

"Under Highway Law (Consol. Laws, c. 25) § 234, providing that all highways that have ceased to be traveled and used as highways for six years shall cease to be highways for any purpose, the public right is extinguished after six years, although the closing of the highway by an individual may have been a wrongful act."

In that case it was further held:

"Where defendant for more than six years had obstructed a public highway with its buildings, some of which entirely blocked it, and others only encroached upon it, and the plaintiffs and the public authorities acquiesced in such obstructions, which prevented use of the highway in certain places, the highway was abandoned under Highway Law, § 234, as to the portions entirely obstructed, but still existed as to the other portions."

Applying this statute, and the case just cited, which was very recently decided by the Court of Appeals, it is perfectly obvious that the portions of Wildey street west of the Dinkel & Jewell gates ceased to be a part of the public highway several years ago. The following facts are practically undisputed:

Long prior to 1892, there was a gate, about 10 or 15 feet east of the river, which shut off all access to the wharf and river, and which remained in that position until about eight years ago. In about 1892 or 1893 another gate was put up across Wildey street near the present office of the plaintiff, which gate was about 55 feet west of the present gate, and completely shut off all approach to the river. The gate was kept closed and locked nights, Sundays, and holidays, and was used only by Smith & Co., who conducted the coal and lumber business which the plaintiff now owns, and their servants and patrons. In 1905 the present gates, which extend entirely across Wildey street and completely shut off access to the dock and river, were erected by the plaintiff, and have been there ever since. These gates are closed and locked, except during business hours, and are used amost exclusively by the plaintiff, its servants, and patrons, and ever since 1897, when the plaintiff took possession of its property, a sign has been upon the gate or gates reading:

"No Trespassing Allowed; Private Property. Stop at Office."

This appropriation of what was a part of Wildey street, and the obstructions placed thereon by the plaintiff and its predecessors, apparently consented to and acquiesced in by the village authorities, if not expressly, by their silence and failure to take proper proceedings to preserve the highway, must be regarded, under the statute and the authorities above referred to, as a closing up and abandonment of that part of the public highway.

Besides, it appears without substantial dispute that not for many years has any public street work been done west of the plaintiff's office, which is near the present gate, nor has the public used it for many years. Extracts from the minutes of the village board tend to show that the village authorities as long ago as 1900 recognized the fact that Wildey street did not extend beyond the easterly line of the plaintiff's coalyard. Many entries in these minutes, covering a period of several years, indicate an understanding on the part of the village authorities that Wildey street extended only to the plaintiff's coalyard, and not to the wharf or river. The single instance in 1907, when an iron culvert and catch-basin were put in by the village inside of the gates in question, to take the drainage water from the north side of Wildey street, the village authorities obtained the plaintiff's consent to do the work inside the said gate, and the materials used in that work were furnished by the plaintiff.

I have given very careful attention to the very able brief submitted by counsel on behalf of the village, and I agree with him that Wildey street was originally properly laid out and opened as a public highway to the river; but, regardless of what the plaintiff or some or one of its officers may have declared in support of an application for a reduction of an assessment, the fact is that at that time the part of the street in question had been obstructed and entirely closed to the public for more than six years, and thereby had ceased to be a public way, and the fact that it may have been wrongfully done by the plaintiff does not change the situation, as we have already seen by the decision of the Court of Appeals in the Barnes Case.

If a village highway is obstructed and shut off, it is the duty of the village authorities to remove the obstruction and to preserve the highway for the use of the public, and where they fail to do that, and permit it to be obstructed and closed for more than six years, and the public during that period of time are excluded from it, and no public work is done upon it, it, under the law, ceases to be a public highway.

The proof of obstruction and abandonment in this case is very much stronger than that in the case of Meyer v. Village of South Nyack, decided by this court at Special Term some time ago, and recently affirmed by the Appellate Division of the Second Department. 159 N. Y. Supp. 1129.

The plaintiff is entitled to judgment for the relief demanded in the complaint, with costs.