JOHN W. FRENCH *vs.* CONNECTICUT RIVER LUMBER
COMPANY.

Hampshire.    Sept. 29. — Nov. 23, 1887.    C. ALLEN & HOLMES, JJ.,
absent.

A corporation purchased all the property of another corporation, and all the shares
of its capital stock except six. After this, the officers of the purchasing cor-
poration were chosen officers of the selling corporation, and the six shares of
stock were transferred to them. *Held,* that the purchasing corporation did not
thereby acquire a right to do an act granted to the selling corporation by its
charter, but which was contrary to the general laws of the Commonwealth.

The Sts. of 1871, *cc.* 285, 362, authorizing certain persons to construct booms across
the Connecticut River, in such a way as not to obstruct the lumber of other
persons, did not repeal by implication the Gen. Sts. *c.* 78, § 5, prohibiting the
floating of logs on the said river unless the logs are formed into rafts.

A. owned and kept a public house and grounds, and in connection therewith owned
a way to a navigable river, and a landing place on the river, by which per-
sons had access to his house from the river. The river at A.'s landing was
obstructed by sand, which was caused to be deposited there by B.'s boom above,
and by logs which were stranded there while being floated down the river by
B., whose acts were illegal. *Held,* that the diminution in A.'s business and
profits caused by obstructing the river at his landing place, cutting off access to
it from the river, and preventing persons from passing from the river to his
house, constituted special and peculiar damage to him, for which he could main-
tain an action against B. *Held, also,* that evidence of the diminution in the
number of visitors to A.'s house, and in the receipts and profits from them,
caused by the acts of B. in obstructing the landing place, was competent upon
the question of the loss occasioned to A. in his business. *Held, also,* that the
judge properly refused to rule that A. could recover only for the expense of
removing the obstructions.

TORT for damages alleged to have been occasioned to the
plaintiff by the wrongful acts of the defendant in obstructing the
Connecticut River at the plaintiff's landing place on said river.
Writ dated February 5, 1883. At the trial in the Superior
Court, before *Barker,* J., the jury returned a verdict for the
plaintiff in the sum of $406.67; and the defendant alleged ex-
ceptions. The facts appear in the opinion.

*D. W. Bond,* for the defendant.

*J. C. Hammond,* for the plaintiff.

W. ALLEN, J. The plaintiff owned and kept a public house
and grounds on the summit of Mt. Holyoke, and in connection
therewith owned a way to the Connecticut River, and a landing

place on the river, by which persons had access to his house from the river. The defendant floated large quantities of logs down the river. The river at the plaintiff's landing was obstructed by sand, which was caused to be deposited there by the defendant's boom above, and by logs which were stranded there while being floated down the river loose, and not in rafts, by the defendant.

The plaintiff contended, and the court ruled, that the defendant had no right to float logs down the river except in rafts. We think that this ruling was right. It may be assumed that the Connecticut River is a public highway, in which the public have a right to float logs, either singly or connected together, unless prohibited by statute. To sustain the ruling, it must appear that some statute prohibited the floating of logs except in rafts for the whole time during which the acts relied on by the plaintiff were committed. The period alleged in the declaration, and to which the evidence applied, is from June 1, 1880, to February 5, 1883.

The provisions of § 5 of the Gen. Sts. c. 78, by their reënactment in the Pub. Sts. c. 94 §.5, were in force until May 27, 1882. That section provided that "No person shall cause or permit to be driven or floated down Connecticut River any masts, spars, logs, or other timber, unless the same are formed and bound into rafts, and placed under the care of a sufficient number of persons to govern and manage the same so as to prevent damage thereby." A similar statute had been in force since 1815. Rev. Sts. c. 52, § 5. St. 1814, c. 150.

The St. of 1882, c. 274, which took effect on May 27, authorized the defendant to construct a boom between the confluence of the Chicopee and Connecticut rivers and the ferry next above (which is several miles below the lower of the booms before mentioned). Section 2 amended § 5 of the Pub. Sts. c. 94, so that it should not apply to that portion of the Connecticut River above its confluence with the Chicopee River. The same section provided for proceedings before the county commissioners by which the damages occasioned to the owners of ferries and boats by the floating by the defendant of logs, etc. not in rafts should be determined, and provided that, "In case neither party petitions to have such damages fixed, any person floating or

driving masts, spars, or logs upon said river not formed into rafts and attended as provided in said section five shall pay all damages done by such floating or driving." It does not appear that any party has ever petitioned for damages.

The St. of 1883, *c.* 183, which modifies these provisions, did not take effect until after this action was commenced.

To control the plain provisions of these acts, the defendant relies upon the St. of 1871, *c.* 362, by which the Holyoke and Northampton Boom and Lumber Company was incorporated, with authority to construct a boom where the defendant's boom next below the plaintiff's landing place now is. The defendant contends that this statute gave by implication to the Holyoke and Northampton Lumber Company the right to float logs not in rafts to its boom, and that it has acquired the right from that company. The court below ruled that the defendant could not justify its acts under the authority which the former corporation may have had. As we think that this ruling was correct, there is no occasion to consider whether there is any ground for the contention that the statute gave any such right to the Holyoke and Northampton Lumber Company. The only ground on which it is contended that the defendant has succeeded to the right of the other corporation is, that it has purchased the property which was used, though not owned, by that corporation; that it has purchased all the capital stock of that corporation, except enough to make stockholders for officers; and that the same persons are officers of both corporations.* The court correctly left it to the jury to say whether the acts and business were those of the defendant, or of the other corporation.

---

* The exceptions stated that the charter granted to the Holyoke and Northampton Boom and Lumber Company in 1871 was accepted, and a corporation formed thereunder, which has continued to hold its meetings to the present time; that the corporation placed a boom across the river below the plaintiff's landing place, and put saw-mills on land belonging to persons who were stockholders ; that, in 1879, the defendant purchased from the stockholders four hundred and ninety-four shares of the capital stock of the Northampton Boom and Lumber Company, and also, from the owners thereof, the land on which the saw-mills stood; and that, after this, the officers of the defendant company were chosen the officers of the Holyoke and Northampton Boom and Lumber Company, to whom the remaining six shares of stock were transferred, one share to each officer.

The defendant further contends that the Sts. of 1871, *cc.* 285, 362, (by which certain persons were authorized to construct a boom in the Connecticut River above Turner's Falls,) repealed by implication the Gen. Sts. *c.* 78, § 5, because they required the booms to be constructed so as not to prevent the passage of boats and lumber of other persons, and also required the defendant to boom logs and lumber of other parties. We see nothing in these statutes inconsistent with the provisions of the General Statutes ; and the facts that the section of the General Statutes remained unrepealed, and was reënacted in the Public Statutes, and that the St. of 1882, *c.* 274, when authorizing the construction of a boom lower down the river by the defendant, recognized the section as in force, and applicable to the defendant by amending it, and making new provisions, seem conclusive against the position taken by the defendant. See *Harrigan* v. *Connecticut River Lumber Co.* 129 Mass. 580.

The plaintiff sought to recover for special and peculiar damages occasioned to him by the public nuisance. The verdict must have been rendered on the first count of the amended declaration, and the special damages are alleged in the amendment to that count as follows : " And thereby the way and access from said river thereto [to the plaintiff's landing place] was hindered and obstructed, and divers persons who would otherwise have resorted to the plaintiff's house and grounds, to the profit of the plaintiff, were hindered and prevented from so doing. And the plaintiff was injured in the use of his landing place, and in the use of his Prospect House and grounds for the purpose for which they were constructed and used." All the damages found by the jury were for damage to the business of the plaintiff. This renders immaterial the question whether the plaintiff, as mortgagor in possession, could recover damages for diminution of the value of the mortgaged estate by the nuisance. The diminution in the plaintiff's business and profits occasioned by obstructing the river at his landing place, cutting off access to it from the river, and preventing patrons from passing from the river to his house, constituted special and peculiar damage to the plaintiff, for which he could maintain an action. *Stetson* v. *Faxon*, 19 Pick. 147. *Harvard College* v. *Stearns*, 15 Gray, 1. *Haskell* v. *New Bedford*, 108 Mass. 208. *Brayton* v. *Fall*

*River*, 113 Mass. 218.    *Blackwell* v. *Old Colony Railroad*, 122 Mass. 1.    *Lyon* v. *Fishmongers' Co.* 1 App. Cas. 662.    *Wilkes* v. *Hungerford Market*, 2 Bing. N. C. 281.    *Rose* v. *Groves*, 5 Man. & Gr. 613.

Evidence of the diminution in the number of visitors to the plaintiff's house, and in the receipts and profits from them, caused by the acts of the defendant in obstructing the plaintiff's landing place, was competent upon the question of the loss occasioned to the plaintiff in his business.

The court properly refused to rule that the plaintiff could recover only for what he had expended in removing the obstructions.    It did not appear that it was possible for the plaintiff to have removed them.    Certainly he owed no duty to the defendant to remove the logs and sand with which the defendant continued to obstruct the river.        *Exceptions overruled.*