## Wood Mosaic Company v. Britt.

(Decided October 31, 1912.)

### Appeal from Barren Circuit Court.

1. Highways—Regulation and Use.—One, in the conduct of his business, is limited to the reasonable use of a highway, and where he so obstructs it as to cause injury to another it is an unreasonable use, for which he is liable in damages to the party aggrieved thereby.

2. Highways—Injuries From Obstructions—Damages.—An adjacent landowner who suffers injury to his land or crops, by reason of an overflow of water, directly and proximately the result of an obstruction on a public road, may recover the amount of his damage from him who caused the obstruction; and if the obstruction was wilful, he may recover double the amount of his damage, as provided by section 4335 Ky. Statutes. Such owner, if the circumstances will admit, under any feasible plan, of avoidance of the injury or reduction of the damage, must make reasonable effort to do so.

3. Highways—Injuries From Obstructions—Trial—Evidence.—The admission of evidence, in detail, as to damage to a crop, which occurred before an alleged obstruction of a public road is a harmless error where the court, by its instruction to the jury, limited it, in its findings, to the injury occurring while the obstruction was in existence.

BAIRD & RICHARDSON for appellant.

PORTER & SANDIDGE and WHITE & GREER for appellee.

Opinion of the Court by Judge Lassing—Affirming.

Archie Britt owns a farm of some one hundred and twenty-five acres on the Louisville and Nashville turnpike road, near the village of Lucas. It is good farming land. The Wood Mosaic Company is an Indiana corporation, doing a general lumber and logging business. During the winter of 1908-9, this compnay purchased a lot of logs in Barren County, in the neighborhood of the Britt farm, and, as the timber was cut in the trees, the logs were hauled by the agents and employes of the Wood Mosaic Company and piled up along the road side, in front of the Britt farm. Britt objected to their being placed there and remonstrated with the agents and employes of the company, but, over his remonstrance, some eighty or hundred logs were piled along there, and a part of them were permitted to remain some sixteen or eighteen months. Britt brought suit against the Wood Mosaic Company, alleging that the placing of these logs on the road side, and in the ditch thereof, by the agents and employes of the defendant, had caused the water to overflow his land and destroy his crop and permanently damage the land itself, and sought damages for injury to the crop, to the extent of $450.00, and for injury to the land in like amount. Later, in an amended petition, which he was permitted to file over the objection of the defendant, he pleaded that the defendant, its agents and servants, had wilfully obstructed and injured the ditch on the side of the road in front of his property, thereby causing the water to flow over his land, and damage his land and crop, as charged in the original petition, and sought to recover double damages of the defendant, on account of said wrongful act, as authorized by section 4335, Kentucky Statutes, as he conceived. The defendant demurred to the petition as amended, and the demurrer being overruled, issue was joined both upon the allegations of wrongful act and the nature and extent of the injury. Upon these issues, the case was submitted to a jury for trial. It returned a verdict in favor of the plaintiff for $300.00, and the company appeals.

It complains primarily, that the court erred in permitting this amended pleading to be filed, claiming that the plaintiff, even though the ditch had been wilfully stopped, could not recover double damages; and

complaint is also made of the evidence that the court permitted to go to the jury, as to the extent of the injury; and that the court did not properly instruct the jury. So much of section 4335 as is material, provides as follows:

"Any person who shall wilfully obstruct, injure or destroy any of said public roads or bridges, any index or finger board, or any culvert or ditch on said roads, or shall wilfully injure any of the tools or implements, or who shall, without right, take possession of or use or appropriate the same, shall be fined for each offense not less than five nor more than fifty dollars, to be recovered in like manner as fines against contractors, and shall also be liable in a civil action for double damages to the county, or any person aggrieved or injured, to be recovered in any court in the county having jurisdiction of the amount claimed."

It is contended for appellant that by the use of the words "or any person aggrieved or injured" in this section, the Legislature meant injury, by reason of coming in contact with an obstruction in the road, such as, if a man would place a rope across the road, and another man, in driving along should be injured by his horse falling over the rope, or, if a ditch had been dug in the road and a traveler injured by falling into it; that this is the character of injury contemplated by the Legislature in the draft of this section. With this line of reasoning, however, we cannot agree. The Legislature evidently did not intend that this section of the statutes should have so narrow or contracted a meaning. It is immaterial how the injury results. The sole question is: Did it result from some wilful act of another, in obstructing a public road? If it did, the party whose wilful act caused the injury is liable.

In the case at bar, the question is: Was the act of the defendant company, in placing its logs in the ditch along by the side of plaintiff's land, in the way and manner in which it did, a wilful act within the meaning of the statute, and if so, was the injury, if any, which plaintiff sustained, the direct and proximate result of such wilful act? If these questions are answered in the affirmative, we have no doubt that the statute applies, and the plaintiff was entitled to have the jury authorized to allow him double damages for the injury sustained. This is in harmony with the construction,

which the trial court placed upon section 4335. It appears from the evidence that these logs were placed near plaintiff's land in the early spring of 1909, and some of them were permitted to remain until the summer of 1910, and until after the crop planting season was over. In his instructions, the court limited plaintiff's right to recover, so far as crops were concerned, to the injury to the crop grown in 1910. The field along and adjacent to the road, along which these logs were piled, was in clover in 1909, and while the evidence shows that the clover was damaged some, in his instructions, no recovery for any injury to this crop was authorized. The following year 1910, this field was planted in corn and tobacco. The evidence shows that something like five acres of the best land in the field was caused to be overflowed by water running over the road into the field, and this overflow drowned out the corn and tobacco growing thereon, causing a total loss of each of said crops growing upon the overflowed portion of this field. The evidence is to the effect that this was a soil of excellent quality, and the part which was overflowed was particularly valuable and strong land and made good crops, worth, prior to the time of the overflow, at least $100.00 an acre. The evidence further shows that, by reason of the overflow, a large amount of clay soil and gravel was carried over and deposited upon this land; and that this deposit, in some places, was as much as six inches deep; in others, not so much; but over the whole of the five acres a deposit of clay, sand and gravel, sufficiently heavy to render the soil of the property practically worthless for agricultural purposes.

The question at issue is a simple one, and while the court should not have permitted to go to the jury the evidence, in detail, as to the damage to the clover crop in 1909, inasmuch as he limited the jury, in its findings, to the value of the corn and tobacco grown in 1910, we are of opinion that appellant was in no wise prejudiced by reason of the admission of this evidence. Indeed, under the evidence, considering the damage to the corn and tobacco crops grown in 1910, and the condition in which the land itself was left, by reason of this overflow, the amount awarded by the jury was small, certainly not more than actual damages; and hence, although complaint is made that the jury was authorized

to find double damages, and damages for the crop grown on this land, in 1909, when the size of the verdict is taken into consideration, we are satisfied that appellant has no just ground of complaint upon either of these objections, for the sum awarded is not more than bare compensation for the injury to the 1910 crop and the injury to the land, as shown by the decided weight of the evidence.

Upon the subject of instructions, the trial court gave entirely too many instructions to cover the points in issue. But, he was undoubtedly influenced, in so doing, by counsel for appellant and appellee, as each asked about the number of instructions which the court gave. In the instructions, as given, the law of the case was fairly presented. The only real question in the case is: Did the act of appellant, through its agents. in depositing its logs in the road side, in front of appellee's property, cause the water to flow from the road over on to appellee's land? Appellee testifies that prior to the time the logs were placed there, there was a good and sufficient ditch on each side of the road, the center of which was some eighteen inches above the bottom of the ditch; that these ditches not only carried the water from the land above his farm at that point, but also from his land as well; that when the logs were dumped there, they were placed in the ditch on each side, from the fence out to the edge of the road bed; that when the water flowed down from above on his side of the road, it backed up against the end of these logs and caused mud and gravel to accumulate there, thus completely shutting off its passage down the road, and there was no place left for it to run but over into his farm, which it did freely; that, not only so, but the defendant's agents hauled logs there, many of them, in wet weather, when the road was soft, and that the heavy wagons cut through the road bed, causing the water to run from the other side of the road over on to his side, and thus greatly increase the volume of the flow of the water, which ran over and upon his land. The evidence for appellant does not seriously contradict this testimony. The agents of appellant undoubtedly knew and understood that appellee objected to their placing the logs there; and they must have known that to place them in the ditch on each side of the road, in the way and manner in which they did,

had the effect to cause the water, which had theretofore flowed down this drain, necessarily to flow over into appellee's field, and while they knew that this was being done, they refused to remove the logs, some of them, for as much as sixteen or eighteen months after they were first put there and when they had been advised that appellee was being injured by reason of their remaining there.

Appellant's counsel also insist that, as it was appellee's duty when he saw the water running in on his farm, to do what he could to minimize the injury; that the court should have told the jury that, if he could have prevented this loss, it was his duty to do so, and that he could not recover anything for any damage which, by reasonable efforts on his part, he could have prevented. The duty of plaintiff, in this particular, is admirably stated in 13 Cyc., 71, where the author says:

"Where an injured party finds that a wrong has been perpetrated on him, he should use all reasonable means to arrest the loss. He cannot stand idly by and permit the loss to increase, and then hold the wrongdoer liable for the loss which he might have prevented. It is only incumbent upon him, however, to use reasonable exertion and reasonable expense, and the question in such cases is always whether the act was a reasonable one, having regard to all the circumstances of the particular case."

There were but two things which appellee could have done to avoid the injury. One was to remove the logs; the other was to dig a ditch inside his field near the fence and parallel with the road, down to a point below where the logs were placed. It is not shown that either of these plans was feasible. The damage was done when the rain-fall was heavy, and the ground necessarily wet. It is doubtful if the logs could then have been moved, even had appellee been equipped to move them; and the cost of digging such a ditch as would have been required might not have been at all reasonable, if the conditions were such that it could have been dug at all. There is no suggestion in the evidence that appellee could have, by any reasonable effort, avoided the injury, and as he was, at most, only required to exercise ordinary care to prevent the injury or minimize the damage, the instruction of the court upon this point was as full and explicit as appellant was entitled to have it.

There is little merit in appellee's defense. It had no right to put the public roadway to such use as would cause injury to an adjoining landowner. In the conduct of its business it is limited to a reasonable use of the road, and when it places obstructions in the road or ditch so as to cause injury to another, it becomes an unreasonable use, and it is responsible to the aggrieved party for such damage as he suffers. If appellant, by its wilful negligence, caused the water to flow over and upon appellee's land to his damage, appellee was entitled to recover double damages; if the negligence complained of was not wilful, then appellee was limited in his recovery to actual damages only. In the instructions given, the court made this point plain.

Upon a consideration of the entire record, we see no reason for disturbing the judgment, and it is, therefore, affirmed.