## Chesapeake & Ohio Railway Company v. Childers.

(Decided May 7, 1926.)

### Appeal from Pike Circuit Court.

1. Damages—$1,000.00 Damages Held Excessive for Injury to Rental Value of Property by Reason of Washout which Deposited Debris Thereon and Injured Foundation of Houses.—$1,000.00 damages held excessive for injury to rental value of property by reason of washout which deposited mud, stones and debris thereon, washed out part of foundations of two small frame houses erected 25 years before, and deposited mud and water in one of them.

2. Damages—In Action for Injury to Rental Value of Property Occasioned by Deposit of Debris Following Washout, Evidence of Value of Property Immediately Before and Immediately After Damage Held Incompetent.—In action for injury to rental value of property occasioned by deposit of debris thereon following washout, evidence of value of property immediately before and immediately after damage held incompetent, since evidence should be confined to cost of replacement and repairs.

BROWNING & REED and KIRK, KIRK & WELLS for appellant.

MOORE & CHILDERS for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellee in 1924 was the owner of a tract of land on Marrowbone creek in Pike county, in or near the town

of Hellier. It was about 150 feet wide and facing a county road which ran at that point about parallel with the creek, and ran back about that distance or further to the right of way of the appellant railway company. It was a narrow valley and the railroad at the rear of appellee's property was erected and ran alongside of a steep mountain. At the rear of appellee's place, and beyond the railroad track, a small stream coming down between two mountains crossed the railroad track and right of way and ran on down through appellee's property and emptied into Marrowbone creek. From the right of way toward the creek there was a considerable down grade, and the little creek ran between two of the three houses on appellee's lot before emptying into the stream.

On the railroad right of way just back of appellee's lot was a fill erected by the railroad, or its predecessor, about 60 feet long, and that fill on the upper side next to the mountain was about ten feet high, and on the lower side next to appellee's property was 20 or more feet high. Through this fill the railroad company had placed a culvert made of wood for the purpose of carrying off the water from the small stream running through the right of way and on through appellee's property. That culvert had been there for a number of years, and as shown by appellee's evidence had become stopped up, so that when a heavy rain came in that area in 1924 there was formed above the company's railroad track, and on the upper side of this fill, a large body of water, either because the culvert was filled up or was insufficient to carry it off. That pond, so formed, reached to the top of the railroad track and some of the water ran over it toward appellee's property, but the weight finally became so great that it washed out the fill for a space of something like 20 feet, and washed the same on and over appellee's property, including rock, mud, dirt and debris of different kinds.

Appellee had on his property three four-room frame dwellings, and when this mass of rock, mud and debris went into the channel of the small stream below the fill it was caused to change its channel, and some parts of this rock, mud and debris, together with the water, were washed and thrown up against two of appellee's houses, and in at least one of them the water and mud was a few inches deep.

In this action by appellee against the railroad company for damages it is alleged in substance that the negligent erection and maintenance of the culvert so placed

through the fill, was the cause of the wash out and the resulting injury to plaintiff's property. The petition is based upon the injury to the rental value of the plaintiff's property, and there is nothing in it seeking a recovery for permanent injury or for damage to its market or salable value.

The answer was a mere traverse, and upon a trial the jury returned a verdict for $1,000.00 in damages, and from a judgment on that verdict this appeal is prosecuted.

There is no complaint of the instructions, and the parties seem to agree that the measure of damages fixed by the trial court was correct, and that measure authorized a recovery for the plaintiff only for such sum as the jury might believe from the evidence was sufficient to restore the plaintiff's property to the condition it was in prior to the injury.

Only two grounds for a reversal are relied upon and they are: (1) that the verdict is grossly excessive, and (2) that incompetent evidence was admitted for the plaintiff.

On the first question there is evidence for the plaintiff showing the deposit of a large mass of stone, mud and debris over a considerable portion of his lot, and that the washout lodged stone and mud up against two of the three houses, washed out part of the foundation of each of the two houses, warped the doors, and that mud and mudddy water were several inches deep in at least one of the houses. Plaintiff had besides himself several witnesses who estimated his damage at $1,500.00 or more, but when they were cross-questioned as to the details of the injury to the houses and to the lot, and what would be the cost of placing them in the condition they were immediately before the damage, their estimates were plainly shown to have been exorbitant and out of all reason. On the other side defendant introduced two or three witnesses who have had experience in removing dirt, rocks, etc., who testify that all such material could have been removed from appellant's lot for from $100.00 to $150.00; and it likewise introduced evidence by carpenters tending strongly to show that the damage to the two houses could have been repaired and placed in their former condition for a small part of the amount of the recovery in this case. When therefore we take into the estimate the fact that these two small frame houses had been erected twenty-five years or longer, and they had no stone founda-

tions under them, we are impelled to the conclusion, after a careful study of the evidence, that the verdict is excessive.

On the trial the plaintiff was permitted to prove by several witnesses, over the objection of defendant, the value of his property immediately before this damage and immediately thereafter. As before recited there was no effort to recover damages for permanent injury either to the lot or to the houses. The plaintiff's petition on its face shows he only sought to recover for the diminution in the rental value of his property caused by the damage, and manifestly the admission of evidence as to permanent injury or injury to salable value was incompetent under the issues formed by the pleadings.

Upon another trial the court will confine the evidence to the cost of replacement and repairs so as to put the property in condition it was before the damage. This is strictly in accord with the measure of damages given by the court which both parties agree was correct.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.