## Solar Coal Company, et al. v. Hoskins.

(Decided June 21, 1927.)

Appeal from Perry Circuit Court.

1. Highways.—Obstruction of road which had been maintained by county as public highway for more than 20 years was common nuisance.

2.  Highways.—Obstruction of highway being tort, any one sustaining
    special injury thereby may recover damages sustained.

3.  Highways.—In action for obstruction of public highway by one
    sustaining special injury by interruption of his business, profits
    of business which were lost and may be ascertained with reason-
    able certainty may be recovered.

4.  Highways.—In action by operators of coal mine for damages for
    obstruction of highway over which they took coal to railroad,
    damages in amount of profits lost held not too conjectural, in-
    definite, uncertain, or remote.

5.  Highways.—In action by operators of coal mine for damages for
    obstruction of road over which they took coal to railroad, instruc-
    tion that measure of damages would be fair and reasonable com-
    pensation for loss of time by plaintiffs or employees, whom they
    paid for time lost, held erroneous, where only loss shown by
    evidence was loss of profit, since instruction for recovery of lost
    profit must give rule to determine profit lost.

6.  Highways.—Where operators of coal mine, suing for damages for
    obstruction of road over which they took coal to railroad, could
    have avoided any part of loss by ordinary care and at reasonable
    expense, such expense is measure of recovery for that part of loss.

J. W. CRAFT for appellants.

NAPIER & HELM for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

In November, 1917, M. C. Hoskins and E. M. McIn-
tosh were each engaged in operating coal mines on Little
Willard creek in Perry county, and were delivering their
coal at Conda Station, on the Louisville & Nashville Rail-
road, by hauling it in wagons over the public highway
from their mines down the creek to the station. The
Solar Coal Company was engaged in opening up its prop-
erty on Willard creek above the mines of Hoskins and
McIntosh, and to get its coal out it constructed a spur
line railroad from the station to its tipple on Willard
creek. The World War was raging, and there was great
demand for coal in America. The Solar Coal Company
was making every endeavor to get out its coal as promptly
as it could, and to this end was rushing the construction
of the spur line to completion. In constructing the spur
line, which ran along near the county highway, it ob-
structed the highway so that Hoskins and McIntosh could
not haul over it. Each of them had a rate of three cars
a week, and had appliances and arrangements for deliv-

ering 25 tons of coal a day. It cost them $2 a ton to get the coal to the railroad, and at the railroad they got $3 a ton for it. For a period of 16 weeks each of them was interrupted half the time, and lost the profit from getting out sixteen 40-ton cars of coal, upon which he would have made a profit of $640. In addition to this, McIntosh incurred an extra expense of 25 cents a ton on 528 tons, which he got out, amounting to $132. They each brought an action against the coal company and the corporation which constructed the railway for it. The two cases were heard together, and on final hearing they recovered judgment for the amounts indicated. The defendants appeal.

It is insisted for the appellants that the proof does not warrant a recovery, and that the jury should have been instructed peremptorily to find for the defendants. The road obstructed was a public highway which had been maintained by the county as such more than 20 years. The obstruction of the public highway was a common nuisance, and, being a tort, any one sustaining a special injury thereby may recover the damages sustained by him. In such cases where a business is interrupted the profits of the business, which were lost and may be ascertained with reasonable certainty, may be recovered. In Barnes v. Midland R. R. Terminal, 218 N. Y. 91, 112 N. E. 926, the defendant constructed a pier in order to provide a means of passage from the upland to the sea, and in doing this obstructed a highway along the foreshore of Staten Island; thus injuring the business of the plaintiffs, who were conducting a resort for public recreation and amusement. Holding that an award of loss of profits was proper, the court said:

"We do not doubt that loss of profits resulting from the nuisance is an element to be considered in any estimate of the damages. French v. Conn. River Lumber Co., 145 Mass. 261 (14 N. E. 113); Weinman v. DePalma, 232 U. S. 571, 575 (34 S. Ct. 370, 58 Law Ed. 733); Bates v. Holbrook, 89 App. Div. 548 (85 N. Y. S. 673); St. John v. Mayor, etc., of N. Y., 6 Duer (13 N. Y. Super. Ct.) 315; Bagley v. Smith, 10 N. Y. 489 (61 Am. Dec. 756). The defendant has no ground for complaint, because it is impossible to measure them to a nicety."

In Bates v. Holbrook, 89 App. Div. 548, 85 N. Y. S. 673, the plaintiff was occupying a building as a hotel un-

der a lease. The defendant erected and maintained certain structures and machinery in the street in front of plaintiff's building, obstructing the use of the street by persons in reaching the hotel. It was held in an elaborate opinion, citing many authorities, that the plaintiff's loss of profits in his business might be recovered.

In French v. Conn. River Lumber Co., 145 Mass. 261, 14 N. E. 113, French owned and kept a public house which was reached from a landing on the Connecticut river. The defendant constructed a boom across the river to catch its logs, and this boom and logs destroyed plaintiff's landing, so that it could not be used. Affirming the judgment in favor of plaintiff, the court, citing many authorities, said:

> "The diminution in the plaintiff's business and profits occasioned by obstructing the river at his landing place, cutting off access to it from the river to his house, constituted special and peculiar damage to plaintiff, for which he could maintain an action."

There is a conflict of authority on the right of action in such cases. In Husband v. Cotton, 171 Ky. 177, 188 S. W. 380, L. R. A. 1917A, 1150, the court, after reviewing the cases in this and other states, thus concluded:

> "The majority rule above announced, permitting the property owner to sue when the highway or street leading to his property has been obstructed, has repeatedly been recognized by this court. . . .
>
> "And this rule is especially applicable where the entire highway or street has been appropriated, as in this case."

By section 4335, Ky. Stats. (1909), any one willfully obstructing a public highway may be fined, and "shall also be liable in a civil action for double damages to the county, or any person aggrieved." In Wood Mosaic Co. v. Britt, 150 Ky. 363, 150 S. W. 357, this court, refusing a new trial, said:

> "There is little merit in appellee's defense. It had no right to put the public roadway to such use as would cause injury to an adjoining landowner. In the conduct of its business it is limited to a reason-

able use of the road, and when it places obstructions in the road or ditch so as to cause injury to another, it becomes an unreasonable use, and it is responsible to the aggrieved party for such damage as he suffers.''

To the same effect see Stein v. C. & O. Ry. Co., 132 Ky. 322, 116 S. W. 733.

The damages sought are not too conjectural, indefinite, uncertain, or remote. The plaintiffs had been getting out coal for some time, and, when the obstruction of the road was removed, they went on as before. The only obstruction to the business shown was the obstruction of the road. While the evidence is not very full, the fair inference from the facts stated is that the plaintiffs, up to the time the road was obstructed, were getting out coal at the rate indicated. The damages are not too remote, for the defendants well knew of the use which the plaintiffs were making of the road, and knew that to obstruct the road as they did would be to destroy the plaintiff's business. The result that followed was not remote, but was such as any man of ordinary prudence would anticipate.

The circuit court did not instruct the jury, if they found for the plaintiffs, to find for them the profits which the plaintiffs had lost. He instructed the jury in substance, if they found for the plaintiffs, to find for each of them a fair and reasonable compensation for any loss of time on the part of himself, his teams, and men in his employ, where they were paid by him for such time so lost. This instruction was not warranted by the pleadings or the evidence. The only loss shown by the evidence was the loss of profit. If we say that, under the evidence, the only way the jury could measure the fair compensation for the loss of time was by the proof of the profit lost, still the jury were given no rule to determine the profit lost. This is essential in an instruction for the recovery of lost profit. The profit lost was the difference between the contract price and the reasonable cost of mining and delivering on the cars at the station, including royalty, so much coal as they were prevented from delivering by reason of the obstruction of the highway by the defendant. If any part of the loss could be avoided by the plaintiffs by ordinary care and at a reasonable expense, such expense is the measure of recovery for that

part of the loss. The court should have instructed the jury as above indicated.

Judgment reversed, and cause remanded for a new trial.