## Anderson v. Hayes.

Jan. 26, 1940.

D. Andrew Shearard for appellant

E. Selby Wiggins for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

The matter here in litigation was in part before us in *Hays* v. Madison County et al., reported in 274 Ky. 116, 118 S. W. (2d) 197, and is related to Hayes v. Berea College, 281 Ky. 492, 136 S. W. (2d) 563. Reference is made to our opinion on first appeal for facts and conclusions as they appeared on the first trial.

The suit was instituted by appellee against the county, the county judge, Berea College, John Anderson and Van Winkle, seeking damages resulting from the building of a fence down and across the Big Hill county road, and felling trees across a portion thereof. This interfered with ingress and egress to and from Miss Hayes' premises, and over the road to a highway.

The lower court had sustained demurrers to, and dismissed the petition, and on appeal we held that the court was correct, in so far as the petition related to defendants, save and except Anderson and Berea. We reversed with directions to overrule demurrers to so much of the petition as constituted a charge against Anderson and Berea, and for "consistent proceedings."

In so far as matters involved were presented on the first trial, and decided by this court on the first appeal, the opinion became and is the law of the case. On the second trial appellee filed an amended petition, which made some changes in items she had theretofore alleged

constituted the elements of damages, and as will be later noted, altered the basis on which she sought to recover damages.

Defendants, Berea and Anderson, filed answer in which they denied the allegations of the petition, in so far as same were of materiality, and which as we observe raised issues which were clearly decided in our first opinion as to the court procedure under which the new road was ordered opened and the old one closed. Affirmatively defendants alleged that at the time the alterations were made, appellee had knowledge of the proceedings and steps taken in the county court in seeking to have the road closed; that she was present in court on various occasions during these proceedings, and discussed the matters involved with the county judge, and had stated that she had no objection to the closing of the Big Hill road, and other matters which undertook to set up estoppel as against appellee. Appellee promptly denied the affirmative allegations of the answer.

After hearing of much proof the case was submitted and the jury returned a verdict against Anderson in the sum of $1,250. Ten or more grounds were set out in the motion for a new trial, which was overruled; judgment was entered in accord with the verdict and Anderson prosecutes appeal. In the brief many of the grounds advanced for a new trial are urged in support of the contention that the judgment should be reversed. They are substantially as follows:

(1) The Court should have peremptorily instructed for Anderson at the close of plaintiff's, and all the evidence.

(2) The verdict of the jury allowed excessive damages, and the verdict is flagrantly against the evidence.

(3) The evidence as to alleged damages was speculative.

(4) The jury failed to take into consideration offsets as against claimed prospective profits.

(5) Lost profits to be recoverable must be shown with reasonable certainty.

(6) The court erred in permitting evidence as to diminution in market value of the property, since the damage, if any, was occasioned by temporary structure.

(7) Error in reading to the jury the mandate of

the Court of Appeals, and certain portions of the pleadings.

(8) Appellee's failure to minimize the damages claimed by removal of the structure, and the court's failure to instruct on this point.

Notwithstanding our criticism of the "wall paper" map used on the first trial, there was apparently no effort to offer a better drawing, and we find some difficulty in working out anything like a correct picture of the situation. A general description of the various roads and lands is given in the first opinion, but this does not, with particularity, afford an idea of the lay of the land with reference to the points in issue. Again, we are at some disadvantage by the recurring use of "here" and "there" and "at this point," indulged by identifying witnesses, who fail to identify "here" and "there."

Before any change was directed, the road, a part of which is in question, led from Richmond to McKee. At a point south of and near Big Hill post office, the road went past the Jesse McHone property, then through John McHone's, thence between McHone's and the College properties. It then continued up a branch between the College and John Anderson's property to a hollow on the east side to a point under a cliff between appellee's and the College properties. It then went to the Abney tract on the top of "Big Hill."

Appellee's 100-acre tract is located on the east side of the old road, and mainly on top of the cliff mentioned. Obstructions in the road running from the top of the hill, adjoining appellee's property to the highway, is the ground of complaint, particularly that portion of the road between the Anderson and College property.

Before 1930 a new highway was constructed from Kingston, in Madison County, to McKee. This went up Big Hill, but at some distance from the old highway, and in a devious manner. This new road was to leave the old Big Hill road at a point below McHone's property, on the left of the hollow, and followed the grade around the hillsides to the Abney place, where it again took up the path of the old road.

From the proof it is indicated that appellee's convenient outlet to the highway, from the upper or southern corner of her place, was down the old road. The evidence shows that a wire fence had been constructed across the Big Hill road north of the mouth of this lane,

and further down the hill toward the outlet from Big Hill road, and further down the hill another fence was built, near Big Spring, across the old road. The fence, of a few wires and some posts in the road, apparently represented the dividing line between the Anderson and College properties. Three trees were also felled across the road.

The fence near the Grant house was there at the time of the trial, but it is fairly clear that the fences near Big Hill Spring and Asberry lane had been down for some time. It also appears that the fence, placed in the middle of the road, had been partially removed, and that the road was open between the College and Anderson properties, though this situation did not give appellee free access down to the highway.

In her original petition appellee sought damages because the obstructions prevented her from hauling from her farm, coal, timber, posts and farm produce. She set her damages at $2,500, if the obstruction be permanent; this on the ground that the sum represented the diminution of the fair market value of her premises. If however, the nuisance be of temporary nature, her damage was the loss of the use of her farm and the expense of having to "use a circuitous route in going to and from her farm, and the loss of the coal which she could have sold from the coal bank, at reasonable royalty, or fifty cents per ton, or the sum of $1,000."

In an amended petition filed in the old case, she asked judgment for $2,500, basing her claim on the loss of use of her properties. Before trial on remand of the case, she filed an amended petition in which she apparently stands on the assumption that she could only recover damages for temporary nuisance, since she bases her damage on the interference with the use and enjoyment of her properties. She changes the basis, seeking to recover on account of her failure to market her coal, fixing the royalty at $1 per ton, instead of 50 cents as theretofore. She also includes damages for her inability to "get out and sell her posts and lumber and to operate her farm during the eight years, all to her damage in the sum of $4,000."

As we read the proof, it is undisputed that there is a coal bank on a portion of appellee's 100-acre tract, the vein estimated to be from 30 to 40 or more inches in thickness, and that coal has been mined and marketed

from the tract for more than twenty years. The operation has been on a small scale, the mine being a drift, commonly called "a wagon mine." It is gathered from the proof that there are yet from 5 to 7 acres not mined out, in the southern portion of the hill next to the Blood property.

The proof also shows that since the erection of the fence and the felling of the trees, appellee has not marketed coal. Whether this is entirely due to the placing of the obstructions, is one question presented, since it is in the testimony, and argued by appellant, that by the exercise of little effort and expenditure of a small sum of money, appellee could have gotten some coal to the market.

We may eliminate at this point any reference to inability to market "timber, posts or produce," since it is shown that there was a very small quantity of marketable timber on the place. One witness places the value on such as being from $20 to $25. While it is shown that there was some produce raised, it was inappreciable, but above all, when appellee came to testify, she limited her damages to her inability to market coal. In other words, her damage was based on a loss of expected profits.

It is gathered from the record, the pleadings and the trend of the evidence, that all parties treated the obstruction as of a temporary nature. The court in his instructions limited recovery to damages during the time of the obstruction.

Appellee at times had an average of five miners engaged in taking out her coal. They occupied cabins on her place. The coal was sold by appellee in two ways; some was sold to the miners on what is called a royalty basis, and some the owner mined and sold by her at her store, and by delivery to purchaser. The quantity thus taken out and sold in either of the two ways, is based upon estimate, thus making the matter of profits, during no fixed period of time, rather indefinite, and subject to some speculation, though, perhaps, the jury was able to reach a conclusion as to prospective profits. This failure was no doubt due to the fact that appellee kept no book or account of moneys received, or expenses paid during her operations, or if so none were referred to in her testimony. Since, however, the case is to be remanded on other grounds, we shall make no further comment on this contention.

Notwithstanding the pleading (amendment) put the basis of recovery on appellee's inability to market coal, produce, timber, etc., and the proof obviously was limited to losses from inability to market coal, or prospective profits from the sale of coal, appellee and her nephew were both permitted, over objection, and at the court's insistence, to testify as to the market value of the farm before and after the placing of the obstructions in the old road. In one instance that difference was fixed at $9,000, and in the other estimated at from $7,000 to $8,000.

It was error to permit this proof to go to and remain with the jury. Whether the instructions given had the effect of curing the error we can not say. In view of the pleadings and proof adduced as to the character of the obstruction, the evidence should have been limited to damages caused by a temporary obstruction. The difference in market value of the damaged property before and after is only allowable where the obstruction is permanent. Chesapeake & Ohio Railway Co. v. Childers, 214 Ky. 361, 283 S. W. 113; City of Pikeville v. Riddle, 200 Ky. 395, 255 S. W. 63; Chesapeake & O. R. Co. v. Caudill, 270 Ky. 107, 109 S. W. (2d) 20; North-East Coal Co. v. Hayes, 244 Ky. 639, 51 S. W. (2d) 960.

On the proof adduced the court instructed the jury that if they believed from the evidence that Anderson built the fence across a public road (which was admitted by stipulation to be such), and that by reason thereof the plaintiff was prevented from marketing her coal, timber and produce, and in going to and from her farm, "you will find for the plaintiff." There was no evidence of any profits lost by inability to market timber and farm produce.

It is shown that appellee had other means, though perhaps not so convenient, for getting out to the highway (over a private passway) with everything but coal. The failure to market coal as she had done before, and reap like profits, was the only real element of damages proven. It was error to allow the jury to consider the matters of timber and farm produce, particularly so when a following instruction limited the value of the use of the property involved in this case, to the net profits which plaintiff could have earned from the operation of the coal mine or mines, on said property in a prudent and business like manner. However. it may be pointed out that the court followed the above language with:

"And if the jury find for plaintiff they will find for her such sum in damages as they may believe from the evidence will fairly compensate her for the diminution in the value of the use of her said property caused by the wrongful stopping up of plaintiff's road by the defendant for the period of time as appears from the evidence she was deprived of the use of said property, &c."

The above instruction is erroneous and misleading, since the jury were told first that the measure of damages was to be based on prospective coal profits, which they had the right to consider, then followed by the instruction to consider the diminution of the land temporarily by reason of the closing of the road. There is only one measure for the damage done to land, where the injury is temporary, and that is the diminution in the value of the use of land during the period of existence of the structure, within proper limitations, or the reasonable cost of removal. City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255; Chesapeake & O. R. Co. v. Salyer, 272 Ky. 171, 113 S. W. (2d) 1152.

On another trial the court, depending on the character of the proof, will instruct on the matter of diminution in the use for proper period, or if the proof justifies same, an instruction on the loss of profits from prospective sales of coal, during the proper period, as was suggested in Solar Coal Co. v. Hoskins, 220 Ky. 693, 696, 295 S. W. 989.

The proof of appellee was indefinite as to the period of time for which she was unable to remove coal. Her testimony carried the period up to the day of trial, which was a year or nearly a year after our mandate issued on the first appeal. Our first opinion held that the fence was unlawfully built. Plaintiff at least had the right then, if she so chose, to remove the obstructions if the costs of removal were not unreasonable. Solar Coal Co. v. Hoskins, supra. The expense of removal would become the measure of recovery for that period of time.

It is shown from the proof that during all the time complained of, unless due to a bad condition of the old road, which condition was not the result of any act on the part of "obstructionists," appellee could have hauled and marketed some coal up the hill to the highway by

means of Asberry lane, and the old road; perhaps one-half as much as she could have down the hill before it was closed. It may be that her profits would have been lessened by reason of increased expenses, but still it was her duty to minimize her damage, if she had access to market at reasonable expenses.

We wrote in Shaheen v. Dorsey, 208 Ky. 89, 270 S. W. 452, that a fence which constitutes a trespass may be removed by any member of the public entitled to the use of the road, if same be done in a peaceable manner. See Johnson v. Ratliff, 233 Ky. 187, 25 S. W. (2d) 355; Wood Mosaic Co. v. Britt, 150 Ky. 357, 150 S. W. 355.

Due to the fact that it is impossible for us to surmise what trend the evidence will take on another trial, we shall not undertake to suggest the exact form of instructions to be given. The court and the counsel for parties should have little difficulty in presenting to the jury correct instructions on the true issues, by reference to the citations we have made.

The proof adduced by appellee was, to say the least, of such indefinite nature and quality as to make it rather difficult for the court to frame proper instructions on the issue. We are bound to admit that we are not able, after reading the proof, to ascertain on just what basis the jury reached the sum adjudged. On the grounds above indicated, reserving all other questions discussed, the judgment is reversed for a new trial consistent with this opinion.