## Hayes v. Berea College.

Jan. 26, 1940.

E. Selby Wiggins for appellant.

J. J. Greenleaf for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

This appeal, together with John Anderson v. Lucy Hayes, 281 Ky. 484, ... S. W. (2d) ..., is a second appeal. See Hays v. Madison County et al., 274 Ky. 116, 118 S. W. (2d) 197, in which will be found a statement of facts and the court's conclusions on matters involved on the first trial. We also make reference to the opinion in Anderson v. Hayes, supra, as to what occurred, and results upon the return of the case to the lower court.

Following the issuance, but before mandate was filed in the lower, Mrs. Hayes filed an amended petition which made some changes in the elements and the extent of damage which she alleged she had suffered by the unlawful erection of the fence on Big Hill.

On the first trial the court sustained demurrer on behalf of all defendants save Berea College and John Anderson. On the second trial these two defendants answered; the substance of their joint answer is set out in the Anderson case.

The court upon conclusion of evidence in behalf of Mrs. Hayes sustained motion for a peremptory in favor

of Berea College, and under directions the jury returned such a verdict, and it is from this order, which also dismissed the petition as to Berea, that appeal is prosecuted. The basis of the court's ruling was that appellant had failed to show that Anderson, who admittedly constructed, or superintended the construction of, the fences, in so doing was the agent or servant of Berea College, or if so was acting within the scope of his authority.

As developed in the Anderson case, supra, the fence originally constructed was in or near the middle of Big Hill road, down the hill between the Anderson and Berea properties. There were also constructed cross fences, and three trees were felled in the road at points where the Anderson and Berea properties joined up with lands of others.

There is no dispute as to the ownership of the adjoining lands of Anderson and Berea, and none that the fence was built in some manner between these properties, immediately after the order of the county court under which parties believed the Big Hill road had been thereby closed. This was manifestly done to protect the properties of Anderson and Berea College, the latter owning the land on the west side and Anderson on the east.

It is said in proof that "they divided the road; John Anderson took half and Berea College took the other half. They run a fence in the middle of the road above the Grant House." The trees were also across the road in that portion between the Berea and Anderson properties; some apparently were cut from the Berea land.

It seems that Mr. Harrison was connected with the management of the Berea properties; he was the "Forest Boss." Willie Hayes, a nephew of Miss Lucy's, after the obstructions were placed in the road, approached Harrison, and said:

"I told him I was going to cut the fence and go through * * * and he said 'You had better not, I put that fence up there and you had better not cut it.'

"Q. Who objected to your going through there, if anybody? A. Mr. Harrison, the college forester. He is the college forest boss. He has been there 10, 12 or 15 years. I have seen him take

his men out and sow wheat and fence anything on the farm.''

Hayes also talked to Anderson about going through, and Anderson said: ''I fenced it up under the other men's advice;'' said the other men were telling him what to do. Anderson testifying, said he rented the Grant House property, which belonged to Berea, and that ''what work I do I work for Mr. Harrison, the college forest boss. He is the boss around the College property. He has charge of putting up fences.'' Asked who put the fence in the roadway, he answered: ''Chaney, a workman for Berea College and Van Winkle, a man who works for me. Mr. Harrison paid his men I guess, and I paid my man.'' Asked who cut the trees, he said: ''Me and another man. Mr. Harrison is in charge of the college property,'' and told him to do it.

As to wire fence across the road, he said he and Mr. Harrison and Mr. Chaney put it across. Van Winkle testified that he helped cut the trees across the road; ''part on the Berea College and part off John Anderson's property.'' Anderson directed the cutting and told him he was cutting them for Mr. Harrison. There was one bee tree on the Berea property and he got directions from Harrison to cut it, and ''take the honey and throw the tree in the road.'' This witness also helped Anderson to put a fence across the road. Anderson employed him. ''He said he would settle with me, then he would settle with Berea College for it.'' Anderson told one witness that ''he would rather I wouldn't go through, and if I did he would have to turn me over to Berea College.''

About the time the application was made for the opening of the new and closing of the old road, appellant told the applicants she would not object to the closing of the Big Hill road if she could get a way out to the highway. Later the nephew, as she says, discussed the matter and there was some kind of promise for Berea College by Mr. Harrison, the College Forester, and others. ''Miss Lucy agreed to close the road if Mr. Blood, Mr. Harrison and Mr. Anderson would give her a way out.''

Aside from what is said above, when we look to the proceedings in the county court in which it was sought to open a new and close the old road, Berea was necessarily a party, and, as shown, agreed to donate land

for the new road, and apparently filed no exceptions to the orders. This fact serves only to show that Berea was interested in and agreeable to the closing of the old road; labored under the impression that the closing order was valid, and from the proof in the last case undoubtedly was active in the closing in the manner described.

Counsel for appellee contends that the court correctly directed a verdict on the proof presented by appellant. It is argued that if the tort be committed in the ordinary course of employment by a servant, the principal or master is liable; if not, the master or principal cannot be held, and cites a number of authorities, principally from texts laying down the well-established rules. 2 C. J. 915-921. From these it may be gathered that when the act done, or contract made is an illegal one, the presumption is in such cases that the agent was acting without the scope of his authority. Also that the burden is with the one who seeks to charge the principal with liability for such acts to prove the extent of the agency. If the presumption existed here, it was overcome by proof which was in no wise controverted.

Counsel also quotes from the same work the rule to the effect: "But where *general* authority is established and the act of the agent is shown not to be of an unusual or extraordinary character, the presumption is that the agent had authority to do such act," and that agency cannot be established by evidence that a person was reputed to be the agent of the principal.

Here it was not shown that Harrison was reputed to be the forest boss, or forester, or fence builder for Berea, but it was actually shown that he was the forest boss, and had been such over a period of time. Nor can it be said that the building of the fences, under the direction of Harrison, by and under the direction of Anderson, who is shown to be an agent of Berea in the building of the fences, was either an unusual or extroadinary act.

We think there was sufficient proof if controverted to have warranted the court in submitting the question to the jury for determination of the relationship, particularly when it is noted that to some measure the maintenance of the fence was undoubtedly known to and ratified by the College.

The proof was sufficient to show that Anderson's

activities were such as might be well concluded to be within the scope of authority. Any competent evidence, direct or indirect, as well as circumstances having a tendency to establish agency, may be heard, and "it is a question of fact to be determined by a jury from consideration of all the evidence, facts and circumstances, acts and conduct of the parties." Crump v. Sabath et al., 261 Ky. 652, 88 S. W. (2d) 665, citing Louisville Cement Co. v. Clell Coleman & Sons, 222 Ky. 183, 300 S. W. 633; McAlister v. Tucker, 203 Ky. 332, 262 S. W. 284; Seaboard Oil Co. v. Huntsman, 196 Ky. 758, 245 S. W. 860.

On these and other authorities, which are cited in the Crump case, we are of the opinion that the court erred in directing the verdict for Berea College; hence the judgment is reversed for proceedings consistent with this opinion.